William G. VANDEVER, Appellant,

v.

James L. GOETTE, et al., Appellee.

No. C14–83–594CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 26, 1984.

A. Jeff Kemp, Houston, for appellant.

Jack C. Ogg, Houston, for appellees.

Before JUNELL, ELLIS and SEARS, JJ.

## OPINION

JUNELL, Justice.

This is an appeal from a judgment that Appellant, William G. Vandever, recover nothing in his suit on a series of loan brokerage contracts. Appellant argues that the contracts were exclusive and that Appellees, James L. Goettee, MNW Properties, Inc., and James L. Goettee Building Company, breached these agreements when they obtained loans from another source. In the alternative, Appellant argues he should recover for the value of his services under the theory of quantum meruit. We affirm.

James L. Goettee was President and majority stockholder of Appellees, MNW Properties, Inc. and James L. Goettee Building Company. The defendants were engaged in land development and building homes in Houston, Texas. By the contracts the Appellees authorized Appellant to apply for and obtain loans for the general purpose of land acquisition and development. Each contract included an exclusivity provision that any applications for loans to lending institutions or investors during the time period of the agreement were to be submitted solely and exclusively by Appellant. The contracts were effective for an initial 60 day period from the date of execution, and thereafter unless cancelled in writing. There was no written cancellation of the contracts by Appellees. Subsequent to the execution of these contracts, three of Appellees' projects were funded by one lender as the result of direct negotiations between Appellees and the lender. A fourth project was not funded and was foreclosed, while a fifth project was sold by the Appellees. Appellant is appealing the judgment of the trial court denying him a commission on the three projects which were funded.

Appellant contends that the three funded projects were the subjects of his loan brokerage contracts and that the receipt of funds therefor constituted performance of the contracts' purposes for which he should receive his commission. Appellant further contends that Appellees' failure to pay the commission owed thereby amounted to a breach of the contract terms for which he should receive damages in the amount of the unpaid commission. Alternatively, Appellant prays for a recovery under the theory of quantum meruit as compensation for the value of his labor invested in compiling loan application materials.

Appellees maintain that Appellant has not proven his cause of action for breach of contract because Appellant has not proven that the application and negotiation for this funding took place subsequent to any agreement with Appellant. The trial court found there was no exclusivity with regard to merely obtaining loans, but the contracts gave Appellant the exclusive right to make loan applications and obtain loans for the Appellees. In addition, Appellees contend that Appellant is not entitled to recovery under quantum meruit since no benefit was shown to have accrued to Appellees from Appellant's labors.

Appellant raises fourteen points of error. In point of error three, Appellant argues that the trial court erred in making Conclusion of Law No. 8 because, as a matter of law, under the terms of the exclusive loan brokerage contracts, if Appellees obtained a loan during the time the contracts were in effect, Appellant was entitled to his commission even though he did not secure a commitment for those loans. In point of error thirteen, Appellant attacks Finding of Fact No. 12 which found that Appellant did not substantially perform his obligations under the contracts. Conclusion of Law No. 8 was that:

Plaintiff's rights to a commission under the terms of the contracts marked and entered as Plaintiff's Exhibits 6, 12, 13, 15, and 17 was contingent upon Plaintiff's having performed in securing a bona fide commitment to make a loan to

one of the Defendants in an amount and upon the terms specified in the appropriate contract.

The contracts provided that they will be controlled by Oklahoma law. Appellant contends that under Oklahoma law he is entitled to his commission on the exclusive loan brokerage contracts regardless of whether he was the procuring cause of a loan commitment. We disagree.

The Supreme Court of Oklahoma has said that the rights and duties of a loan broker depend in general upon the same principles which govern a broker who undertakes to find a purchaser of real property. *Deming Inv. Co. v. Britton*, 72 Okl. 145, 179 P. 468 (Okla.1919). Appellant then cites two cases for the proposition that under Oklahoma law, if the agency for the sale of real estate is one with the exclusive right to sell, the agent does not have to be the procuring cause of the sale in order to be entitled to his commission. *Leatherman v. Freeman*, 266 P.2d 473 (Okla.1954); *Shorten v. Mueller*, 206 Okl. 62, 241 P.2d 187 (Okla.1952). However, in *Britton*, the opinion makes it clear that the loan broker was entitled to its commission because it procured a lender who was ready, willing and able to lend the money. While there are statements in both the *Leatherman* and *Shorten* opinions that a broker with an exclusive agency may be entitled to a commission regardless of whether he is the procuring cause of a sale, the facts in each of those cases show that the agent had procured a purchaser who was ready, willing and able. Because the *Britton* opinion involves loan brokers, we believe it controls this cause. Accordingly, since Appellant did not procure a lender who was ready, willing and able to lend money to Appellees, Appellant has not shown that he is entitled, as a matter of law, to his loan brokerage commission. In addition, the record shows Appellant did not substantially perform his obligations under the contracts. Appellant's third and thirteenth points of error are overruled.

■ In points of error one and two, Appellant argues that the trial court erred in making Conclusions of Law Nos. 5 and 6 because Plaintiff's Exhibits 13 and 15, respectively, were exclusive loan brokerage contracts which were breached, as a matter of law, when Appellees obtained loans related to the purposes set forth in the contracts during the time the contracts were in effect and failed to pay Appellant the commission due him under the contracts. Appellant argues he was entitled to his commission regardless of the source of the loan commitment. Conclusion of Law No. 5 stated "Plaintiff, William G. Vandever, failed to show sufficient evidence of a breach of any kind as to the Contract marked as Plaintiff's Exhibit No. 13." Conclusion No. 6 made the same finding as to the contract marked Plaintiff's Exhibit No. 15. Appellant argues that these contracts were breached when Appellees obtained loans from other sources after the date the contracts were accepted by Appellant.

Appellant argues that the contracts were breached, as a matter of law, when Appellees obtained loans while the contracts were in effect. The contracts were pre-printed forms with blanks that had been filled in. The title of each contract was "Authorization to Obtain Loan." The first line of each contract provides that "The undersigned, being duly authorized, do hereby exclusively employ, grant, commission and authorize William G. Vandever, ... to make application(s) on our/my behalf for a loan...." The next line in each contract provides "It is further agreed by and between the parties that any application(s) for loans to lending institutions or investors during the time period of this agreement shall be submitted solely and exclusively" by the Appellant.

Appellant argues that the trial judge interpreted the contracts so that the only exclusive right given to the Appellant was the right to submit loan applications. We do not believe the trial court's interpretation was that narrow. As we read the record, the trial judge interpreted the contracts to give the Appellant the exclusive right to both apply for and obtain loan commitments on behalf of Appellees.

There is no dispute that Appellees obtained loan proceeds through a source other than Appellant for the development of the subject matter of the contracts in issue. However, there was a fact issue as to whether Appellees breached their contracts with Appellant by *applying for* and obtaining loans during the pendency of the contracts. Appellant has failed to show the exclusive loan brokerage contracts were breached when Appellees merely obtained loan proceeds while Appellant's contracts were still in effect. Appellant's points of error one and two are overruled.

■ In points of error six and seven, Appellant argues that the trial court erred in making Findings of Fact Nos. 9 and 10, respectively, because those findings of fact are against the great weight and preponderance of the evidence.

Those findings were that:

9. The loan obtained through a source other than Plaintiff, by Defendant, James L. Goettee, et al, for the development of the subject matter of the contract marked as Plaintiff's Exhibit # 13, was not the result of an application made after the execution of the Contract marked as Plaintiff's Exhibit No. 13.

10. The loan obtained through a source other than Plaintiff by Defendant, James L. Goettee, et al, for the development of the subject matter of the contract marked as Plaintiff's Exhibit # 15 was not the result of an application made after the execution of the Contract marked as Plaintiff's Exhibit No. 15.

The contract marked as Plaintiff's Exhibit No. 13 was identified as an authorization to obtain a loan for a development named Memorial Northwest, Section IV. This project was financed. In an attempt to show when Appellees applied for the loan on this project, Appellant introduced into evidence Plaintiff's Exhibit No. 20 which states in part that "you hereby authorize Drew Mortgage Co., ... to make application on your behalf for a $881,872 loan to one or more of the lending institutions of our selection." This document, dated December 16, 1974, is within the time period

of Appellant's contract. The authorization given to Drew Mortgage Co. resulted in Appellees obtaining a loan of $881,872 for the Memorial Northwest, Section IV project. A logical inference from the authorization being given to Drew Mortgage Co. after December 16, 1974, and later obtaining of a loan, is that a loan application could have been made on Appellee's behalf while Plaintiff's Exhibit No. 13 was still in effect. However, Appellant's own witness, Mr. Mike Kelly, referred to Plaintiff's Exhibit No. 20 as an authorization for the commitment of the loan. It could be inferred from that characterization of the document that a loan application had been made before the date of Plaintiff's Exhibit No. 20. Looking at all of the evidence and the inferences from the evidence, we are unable to say that the trial court's Finding of Fact No. 9 was so against the great weight and preponderance of the evidence as to be clearly wrong. Appellant's sixth point of error is overruled.

Appellant introduced Plaintiff's Exhibit No. 18 in order to show that an application for a loan relating to the subject matter of the contract marked as Plaintiff's Exhibit No. 15 was made while Appellant's contract was still in effect. Plaintiff's Exhibit No. 15 was dated March 15, 1975. Plaintiff's Exhibit No. 18, dated April 29, 1975, provides in part:

We have examined the information, exhibits and/or plans and specifications submitted to us in connection with an application for a mortgage loan.... Drew Mortgage Co., hereby receipts and acknowledges a commitment fee in the amount of $5,520. Paid as an application fee in good faith deposit.

Appellant argues that this document was serving as an application or was in response to a contemporaneous application that had been submitted. Again, Mr. Kelly interpreted this document as a commitment letter outlining the terms of a loan. We believe that the document does not clearly show when an application for a loan was made. The trial court's Finding of Fact No. 10 is not against the great weight and

preponderance of the evidence. Appellant's seventh point of error is overruled.

■ In point of error number eight, Appellant argues that the trial court erred in granting a Motion for Directed Verdict at the close of Plaintiff's case as to the cause of action stated in connection with Plaintiff's Exhibit No. 12 because there is some evidence to support Plaintiff's theory of recovery. Looking at the evidence and inferences in the light most favorable to Appellant, we believe there is some evidence that a loan application was made in connection with the subject matter of Plaintiff's Exhibit No. 12. However, there is no evidence as to when that application was made. Since the trial judge interpreted Plaintiff's Exhibit No. 12 as an exclusive contract *to apply for* and obtain a loan, Appellant failed to introduce any evidence on an essential element of recovery under his breach of contract action. As to Appellant's cause of action under the theory of quantum meruit, Appellant failed to produce any evidence that Appellees gained a benefit from any work done by Appellant. Point of error number eight is overruled.

Point of error number four is that "the trial court erred in Finding of Fact No. 8 because there is no evidence to support the trial court's finding and because it is conclusively, as a matter of law, established to the contrary." The fifth point of error attacks the legal sufficiency of the evidence to support the Conclusion of Law No. 3.

Finding of Fact No. 8 was: "As to Plaintiff's Exhibit No. 12, the subject matter property was sold under threat of foreclosure during the time period of the contract." The trial court concluded, in Conclusion of Law No. 3, that performance of the contract marked as Plaintiff's Exhibit No. 12 was rendered "impossible by reason of the non-existence of the subject matter." Appellant argues that, because it is an affirmative defense, Appellees had the burden of proof on the issue of impossibility of performance due to the non-existence of the subject matter. Appellees concede that the challenged finding and conclusion are

incorrect. Appellees respond by arguing that despite that error, the judgment was correct because a Motion for Directed Verdict as to the cause of action relating to Plaintiff's Exhibit No. 12 was granted for the reason that no evidence of any breach was presented.

■ An erroneous Finding of Fact or Conclusion of Law does not mandate that the judgment of the trial court must be reversed. If the judgment is otherwise correct upon the merits, it is not to be reversed because the trial judge grounded it upon incorrect legal reasons. 4 R. McDonald, Texas Civil Practice in District and County Courts. § 16.05 (rev. 1971). Due to our disposition of point of error eight, the trial court's error in making Finding of Fact No. 8 and Conclusion of Law No. 3 is harmless. Points of error four and five are overruled.

■ Appellant's point of error nine is that "the trial court erred in excluding Plaintiff's Exhibit No. 3H because said exhibit is an admission against interest and clearly relevant." Even if we assume the exhibit constituted an admission against interest, an issue we do not decide, Appellant has failed to show that the trial court erred by refusing to admit the exhibit. In order to complain on appeal of the trial court's refusal to admit evidence, the offering party must specify the purpose for which it is offered. 1 R. Ray, *Texas Law of Evidence Civil and Criminal*, § 21 (Texas Practice 3d ed. 1980); *Employers Reinsurance Corporation v. Ingram*, 340 S.W.2d 848 (Tex.Civ.App.—Texarkana 1960, writ ref'd n.r.e.). Appellant's attorney, after offering Plaintiff's Exhibit No. 3H, gave no reason why the document was admissible. The trial court did not err in refusing to admit the exhibit. Appellant's ninth point of error is overruled.

In finding of Fact No. 16, the trial court found that "Plaintiff, William G. Vandever, has sustained no damages." Finding of Fact No. 17 was "Any costs expended by Plaintiff, William G. Vandever, in his endeavors were in no way caused by Defendant, James L. Goettee, et al." In points of

error number 10 and 11, Appellant argues that Findings of Fact Nos. 16 and 17, respectively, were against the great weight and preponderance of the evidence. Appellant argues that under Oklahoma law the proper measure of damages in a breach of contract cause of action is the amount which will compensate the aggrieved party for all the detriment proximately caused by the contract breach. We do not dispute that statement of Oklahoma law. However, Appellant has failed to establish a breach of contract committed by Appellees, and any error by the Trial Court in making Finding of Fact Nos. 16 and 17 was harmless. TEX.R.CIV.P. 434. Appellant's tenth and eleventh points are overruled.

The trial court's ninth conclusion of law was that Appellant was not entitled to recover attorneys fees. In point of error number twelve, Appellant attacks that conclusion "because under both Texas and Oklahoma law Plaintiff is clearly entitled to recover attorneys fees." Oklahoma law provides that in a suit upon a contract for services the prevailing party may recover attorney's fees. *See* 12 OKLA.STAT.ANN. § 936. Appellant failed to prevail on his breach of contract action and has failed to establish his entitlement to attorney's fees under either Texas or Oklahoma law. The twelfth point of error is overruled.

Appellant's fourteenth point of error is that the trial court erred in making "Conclusion of Law No. 7 because Plaintiff proved a prima facie case of quantum meruit." Conclusion of Law No. 7 was that: "Plaintiff has failed to prove facts sufficient to sustain any recovery on the theory of *quantum meruit.*" We agree with Appellant that quantum meruit is based upon promises implied by law to pay for beneficial services rendered and knowingly accepted. Appellant failed to show that any of the services performed conferred a benefit upon Appellees. Without such a showing, Appellant failed to establish a prima facie case of quantum meruit. Point of error fourteen is overruled.

The judgment is affirmed.