**COMMUNITY INITIATIVES, INC., Appellant,**

v.

**CHASE BANK OF TEXAS, National Association; Al Martinez–Fonts; Bank of America, National Association; Dave Graham; Norwest Bank El Paso, National Association; Wells Fargo & Company; and Nathan E. Christian, Appellees.**

No. 08–02–00527–CV.

Court of Appeals of Texas, El Paso.

Dec. 23, 2004.

Michael R. Wyatt, El Paso, for Appellant.

Jim Curtis, Kemp Smith LLP, H. Keith Myers, Mounce, Green, Myers, Safi & Galatzan, El Paso, Temple Ingram, Barron & Newburger, P.C., Austin, for Appellees.

Before Panel No. 4 BARAJAS, C.J., LARSEN, and McCLURE, JJ.

## OPINION

SUSAN LARSEN, Justice.

Community Initiatives, Inc. brings this appeal from a no-evidence summary judgment. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1998, Raymond Caballero formed Count Me In, Inc. (CMI) with the purpose of increasing voter participation. CMI later changed its name to Community Initiatives, Inc. (CI). Also in 1998, Mary Hull Caballero and Texas Senator Eliot Shapleigh conceived of an organization called Community Scholars (CS) that would enlist students to research public policy issues. After CMI changed its name to CI, CI became an umbrella organization that encompassed both the CMI program and the CS program.

The CS program was well funded; the CMI program was not. Therefore, a CI board member, Richard Fleager, began discussions with Wesley Jurey, the president of the Greater El Paso Chamber of Commerce, attempting to persuade the Chamber to assist in fund-raising for CMI. Although the parties disagree about the nature and extent of the commitment the Chamber made to CMI, it is undisputed that on June 7, 1999, the Chamber sent a letter and pledge form to its members, soliciting donations for CMI. The pledge form stated that CMI was a project of CI and requested that contributions be remitted to CI.

On June 15 and June 18, 1999, CS students interviewed representatives of Wells Fargo and Chase Bank regarding their banking practices.[1] On June 23, 1999, a CS student sent written questions to Bank of America. The students' questions were designed to reveal how the banks' business, charitable, and lending practices affected the local economy. Years earlier, Raymond Caballero had asked similar questions of local banks and had encouraged local institutions to consider the banks' answers in deciding where to make their deposits.

Al Martinez–Fonts was the chairman and CEO of Chase. On or about June 18, 1999, having received the Chamber's fund-raising letter and having been advised of the CS students' questions, Martinez–Fonts called Jurey. Noting that the pledge form requested that contributions

---

1. It is undisputed that the bank now known as Wells Fargo was known as Norwest in 1999. For simplicity, we refer to that bank as Wells Fargo throughout this opinion.

be remitted to CI, Martinez–Fonts asked Jurey about the connection among CI, CMI, and CS. He told Jurey that he would be inclined to contribute to CMI, but he did not want his contribution to go to CS.

Jurey called Fleager to get the answers to Martinez–Fonts's questions. According to Fleager, Jurey also asked him whether CI was investigating banks. Fleager was not sure how to respond to the funding questions. He knew that funds donated to CMI were kept separate from funds donated to CS, but he also knew that there was an outstanding loan from CS to CMI. It was therefore possible that funds donated to CMI could end up with CS if CMI used the funds to repay the loan.

Fleager does not recall whether he informed Jurey that CMI and CS funds were kept separate. According to Jurey, Fleager called him back the next day and told him that any funds donated to CMI would be used only for CMI, but that the CS and CMI accounts were not segregated. Jurey conveyed this information to Martinez–Fonts. Jurey also called David Graham to advise him of his conversations with Fleager and Martinez–Fonts. Graham was the Chamber's chairman of the board and also president of the El Paso branch of Bank of America. Graham suggested that they convene a meeting of the Chamber's personnel committee to discuss the issues raised by these conversations.

In the meantime, Martinez–Fonts spoke with Graham and Nathan Christian about the questions being asked by the CS students. Christian was the regional manager of Wells Fargo. Martinez–Fonts also discussed the CS students with Rick Ybarra, a Chase employee who also served on CI's board. Based on Martinez–Fonts's notes dated June 22, 1999, it appears that Ybarra told Martinez–Fonts that CMI and CS "keep books separate by internal ledgers."

Fleager discussed the questions posed by Jurey with Raymond Caballero. Upon learning that CS was researching the banks' practices, Fleager became concerned that the research could hamper CI's ability to raise money for CMI from the banks. Fleager then called Stuart Schwartz, CI's president. According to Schwartz, Fleager advised him that there was a "problem" with the Chamber's fund-raising efforts. Fleager and Schwartz thought the problem could be solved by separating CS and CMI. Fleager discussed the possible separation with Jurey, who suggested that CMI could become part of the Chamber Foundation. On or about June 22, 1999, Fleager, Schwartz, and Jurey met to discuss the specifics of moving CMI to the Chamber Foundation.

That afternoon, the Chamber's personnel committee met. The personnel committee included Graham, as chairman of the board, and Christian, as immediate past chairman of the board. Fleager and Martinez–Fonts, who was chairman of the Chamber Foundation, were also present. The plan to move CMI to the Chamber Foundation was discussed at the meeting. According to Fleager, Martinez–Fonts stated that his concern was that he did not want to make a donation to CMI and later find out that the money actually went to CS. Fleager assured him that CMI and CS kept their funds separate, but he also mentioned the loan from CS to CMI.

Also at the meeting, Jurey presented the committee with two proposed letters, dated June 22, 1999. One of the letters was drafted in contemplation of CMI becoming part of the Chamber Foundation and advised Chamber members of that fact. The other letter advised members that the Chamber had just learned that CMI and CS were both programs of CI and that CS had been "investigating area banks." The letter stated, "It is also our

understanding that funds have been 'loaned' between the programs," that "we cannot assure you that your funds will be used exclusively for 'Count Me In,' and that the Chamber has withdrawn its endorsement of the program...." Jurey faxed a copy of this letter to Martinez–Fonts before the meeting. Martinez–Fonts testified that he told Jurey he did not think the Chamber should send the letter. It is undisputed that neither letter was sent to Chamber members. After the personnel committee meeting, the Chamber took no more action regarding CI, CMI, or CS. The Chamber did not withdraw the letter that it had already sent, but it also did not assist CMI with any more fund-raising efforts.

The day after the personnel committee meeting, CI's board held an emergency meeting and voted to transfer CMI to the Chamber Foundation. Soon afterwards, several members of the board, including Schwartz and Fleager, resigned. Schwartz and Fleager resigned because Raymond Caballero made it clear that he did not approve of the board's decision to transfer CMI to the Chamber Foundation. A week later, the remaining board members reversed their previous votes and decided not to transfer CMI to the Chamber Foundation.

In 2000, CS became a separate nonprofit corporation. CMI remains with CI, but it has no staff and only a skeletal board of directors.

CI brought this suit, asserting several causes of action against Chase, Wells Fargo, Bank of America, Martinez–Fonts, Christian, and Graham. The defendants all filed no-evidence summary judgment motions, which were granted by the trial court.

## APPROPRIATENESS OF NO-EVIDENCE SUMMARY JUDGMENT

In its third issue, CI argues that a no-evidence summary judgment was not appropriate under the circumstances of this case because a sufficient time for discovery had not passed and because the Appellees' motions failed to specify which elements of CI's claims were lacking.

No-evidence summary judgments are authorized by Rule 166a(i) of the Texas Rules of Civil Procedure, which provides:

> After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. The motion must state the elements as to which there is no evidence. The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact.

### No Abuse of Discretion

Assuming without deciding that CI did not waive its complaint on inadequate time for discovery,[2] we nevertheless find no grounds for disturbing the trial court's conclusion on this issue. We review the trial court's decision for abuse of discretion. *Gourrier v. Joe Myers Motors, Inc.*, 115 S.W.3d 570, 573 (Tex.App.-Houston [14th Dist.] 2002, no pet.).

 Whether there has been an adequate time for discovery is case specific. *Tempay, Inc. v. TNT Concrete & Const., Inc.*, 37 S.W.3d 517, 520–22 (Tex.App.-Aus-

---

**2.** CI neither filed an affidavit explaining the need for further discovery, nor a verified motion for continuance on that ground; it simply asserted in its summary judgment response that it had not had adequate discovery time.

tin 2001, pet. denied). To determine whether an adequate time has elapsed, courts consider the following non-exclusive factors: (1) the nature of the suit; (2) the nature of the evidence necessary to controvert the summary judgment motion; (3) the length of time the case has been active in the trial court; (4) the length of time the motion has been on file; (5) the amount of discovery that has already taken place; (6) whether the movant has requested stricter discovery deadlines; and (7) whether the discovery deadlines are specific or vague. *Id.* at 522 & n. 8. Rule 166a(i) does not require that discovery be completed before a no-evidence motion is filed. *Specialty Retailers, Inc. v. Fuqua,* 29 S.W.3d 140, 145 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). But the rule contemplates that the nonmovant will have a sufficient opportunity to conduct discovery. *Tempay,* 37 S.W.3d at 521. Therefore, a party should not be able to abuse the discovery process by withholding key evidence and then use the resulting lack of evidence to obtain a summary judgment. *Id.; Specialty Retailers,* 29 S.W.3d at 145.

This suit was commenced in October 1999. After being removed to federal court, it was remanded back to state court in March 2000. The Appellees filed motions to stay the state court proceedings pending their appeal of the remand order. The record does not contain a ruling on these motions, but it appears that discovery did not commence in earnest until March 2001. That month, the trial court issued a scheduling order that required all discovery requests and deposition notices to be served by November 1, 2001. The summary judgment deadline was set for November 2, 2001. Trial was set for January 28, 2002. On the Appellees' motion, the scheduling order and trial setting were vacated in October 2001. The next month, the court set a trial date of September 30, 2002. The Appellees filed their motions for summary judgment in July 2002, and their supplemental motions, addressing the business disparagement claim, in August 2002. The court heard the original summary judgment motions on August 15, 2002, and the supplemental motions on September 12, 2002.

CI argues that "procedural wrangling" consumed most of its time and that it therefore did not have a sufficient opportunity to conduct discovery. The record reflects that both sides filed motions to compel certain discovery and that the parties took some discovery disputes to the trial court. CI points out that its deposition of Graham had to be stopped for purposes of filing a motion to compel because Graham refused to answer certain questions. CI acknowledges, however, that Graham's deposition was completed before the summary judgment motions were filed.

In addition to deposing Graham, CI also deposed Christian and Martinez–Fonts, as well as Fleager, Jurey, and Schwartz. The Appellees deposed the Caballeros. All of these depositions, along with exhibits and other documents, were attached to CI's response to the summary judgment motions. Although CI asserted in its summary judgment response that it had been unable to depose two witnesses, CI has not established that it exercised diligence in obtaining the depositions. CI noticed the deposition of one of these witnesses, Rick Ybarra, along with five other witnesses, for April 14, 2000. CI eventually deposed the other five witnesses, and the record does not reflect why Ybarra was never deposed. As for the other witness mentioned in CI's response, Gayle Ray, CI does not cite anything in the record to show that it ever noticed her deposition.

In reference to the factors listed above, the nature of this suit and the summary

judgment motions required a fact-intensive response. The motions were only on file for a minimal length of time. There is no indication that the Appellees had requested stricter discovery deadlines; instead, they obtained an order vacating the deadlines that had been set. The court's last order setting a trial date stated that discovery was to be completed pursuant to a "level 2" discovery control plan, although this suit was filed under "level 3." *See* TEX.R. CIV. P. 190.1–190.4. All of these factors suggest that an adequate time for discovery had not passed.

■ However, this case had been on file for almost three years when the summary judgment was granted, and discovery had been actively pursued for at least a year and a half, with a significant amount of discovery having been obtained. The summary judgment motions were filed just two months before the trial setting. There is nothing in the record to show that the Appellees were able to withhold key evidence. And, as noted above, CI has not established that the evidence it had not obtained would be material. Under these circumstances, the trial court did not abuse its discretion in concluding that an adequate time for discovery had passed.

### The Requirement of Specificity

CI argues that the trial court erred in granting summary judgment because the defendants' motions failed to specify the elements as to which there is no evidence. CI contends that because the motions asserted that there was no evidence to support each element of every one of its claims, the motions were in practical effect conclusory and general no-evidence challenges.

Rule 166a(i) requires the movant to "state the elements as to which there is no evidence." The comment to the rule states, "The motion must be specific in challenging the evidentiary support for an element of a claim or defense; paragraph (i) does not authorize conclusory motions or general no-evidence challenges to an opponent's case."

■ The purpose of the specificity requirement is to provide the opposing party with fair notice of the matters on which it must produce some evidence. *See Dodd v. City of Beverly Hills,* 78 S.W.3d 509, 513 (Tex.App.-Waco 2002, pet. denied). The motion does not have to include a specific attack on the evidentiary components that make up an element of a claim. *Dominguez v. Payne,* 112 S.W.3d 866, 868 (Tex. App.-Corpus Christi 2003, no pet.); *In re Mohawk Rubber Co.,* 982 S.W.2d 494, 497–98 (Tex.App.-Texarkana 1998, orig. proceeding). Instead, it must only "state the elements as to which there is no evidence." TEX.R. CIV. P. 166a(i); *compare Oasis Oil Corp. v. Koch Ref. Co.,* 60 S.W.3d 248, 255 (Tex.App.-Corpus Christi 2001, pet. denied) (holding that motion was insufficient because it merely challenged "other elements"), *Weaver v. Highlands Ins. Co.,* 4 S.W.3d 826, 829 n. 2 (Tex.App.-Houston [1st Dist.] 1999, no pet.) (holding that motion was insufficient because it did not specifically allege that the plaintiff lacked evidence or challenge a particular element of the plaintiff's claim), *and Abraham v. Ryland Mortgage Co.,* 995 S.W.2d 890, 892 (Tex.App.-El Paso 1999, no pet.) (holding that motion was insufficient because it made no reference to any element of the plaintiff's claim or any reference to any specific allegation in the plaintiff's petition), *with Baker v. Gregg County,* 33 S.W.3d 72, 77 (Tex.App.-Texarkana 2000, no pet.) (holding that motion that listed the plaintiff's claims and stated the elements that were lacking in each claim was sufficient), *and Hight v. Dublin Veterinary Clinic,* 22 S.W.3d 614, 623 (Tex.App.-Eastland 2000, pet. denied) (holding that mo-

tion that listed the elements of negligence and stated that plaintiffs "cannot provide evidence to support any of the aforementioned elements" was sufficient). Moreover, nothing in rule 166a(i) or its comment forbids a defendant from challenging every element of the plaintiff's claims, as long as each element is distinctly and explicitly challenged. *See* TIMOTHY PATTON, SUMMARY JUDGMENTS IN TEXAS, PRACTICE, PROCEDURE AND REVIEW § 5.03[2][b] (2003); *see also Gourrier,* 115 S.W.3d at 574 (challenge to forty-one elements or combinations of elements).

■ All the summary judgment motions in this case meet the specificity requirement. The motions list the elements of each cause of action and specifically identify the elements as to which there is no evidence. Additionally, the motions are supported by citations to applicable cases and statutes.

CI argues that the motions improperly required it to marshal its evidence. *See* TEX.R. CIV. P. 166a(i) cmt. (stating that the nonmovant is not required to marshal its proof). We disagree. To marshal one's evidence is to arrange all of the evidence in the order that it will be presented at trial. *Saenz v. Southern Union Gas Co.,* 999 S.W.2d 490, 493–94 (Tex.App.-El Paso 1999, pet. denied). All CI had to do to defeat the summary judgment motions was to point out *some* evidence that raises a fact issue on each of the challenged elements; it did not have to present *all* its evidence in the order that it would be presented at trial.

CI asserts that Chase and Wells Fargo attempted to comply with the specificity requirement in their reply briefs, but CI did not have enough time to respond to the specific evidentiary challenges raised in the reply briefs because they were filed only one day before the summary judgment hearing. CI argues that because

these replies constitute the only proper motions for summary judgment, they should have been filed twenty-one days before the hearing. *See* TEX.R. CIV. P. 166a(c) ("[T]he motion ... shall be filed and served at least twenty-one days before the time specified for hearing.").

■ The record does not reflect that CI made this argument to the trial court. Therefore, it is not preserved. *See* TEX. R.APP. P. 33.1(a)(1); *see also Alaniz v. Hoyt,* 105 S.W.3d 330, 339 (Tex.App.-Corpus Christi 2003, no pet.); *Knapp v. Eppright,* 783 S.W.2d 293, 296 (Tex.App.-Houston [14th Dist.] 1989, no writ).

■ In any event, there is no deadline for filing a reply to a summary judgment response, and a reply may be filed up until the day of the hearing. *See Alaniz,* 105 S.W.3d at 339; *Callaghan Ranch, Ltd. v. Killam,* 53 S.W.3d 1, 4 (Tex.App.-San Antonio 2000, pet. denied); *Wright v. Lewis,* 777 S.W.2d 520, 522 (Tex.App.-Corpus Christi 1989, writ denied). We agree with CI that a movant may not use a reply brief to meet the specificity requirement or to assert new grounds for summary judgment. *See Callaghan,* 53 S.W.3d at 4; *see also Sams v. N.L. Indus.,* 735 S.W.2d 486, 487–88 (Tex.App.-Houston [1st Dist.] 1987, no writ) (holding that because a reply containing two additional grounds was essentially a new motion for summary judgment, the nonmovant was entitled to twenty-one days' notice and a hearing before summary judgment could be granted on the new grounds). In this case, however, er, the reply briefs do not assert new grounds for summary judgment and, as we explained above, the motions for summary judgment satisfied the specificity requirement. The reply briefs merely reply to CI's summary judgment evidence and arguments. CI's third issue is overruled.

## EXCLUSION OF SUMMARY JUDGMENT EVIDENCE

In its second issue, CI argues that the trial court erred in sustaining the Appellees' objections to its summary judgment evidence and in excluding essentially all of its evidence.

### Waiver

 A basic tenet of appellate procedure is that appellate courts do not generally consider complaints not raised in the trial court. *See* Tex.R.App. P. 33.1(a)(1). Therefore, to preserve error from a ruling that excludes evidence, the complaining party must inform the trial court of the purpose for which the evidence is offered and the reasons why the evidence is admissible. *In re C.Q.T.M.*, 25 S.W.3d 730, 737 (Tex.App.-Waco 2000, pet. denied); *Melendez v. Exxon Corp.*, 998 S.W.2d 266, 274 (Tex.App.-Houston [14th Dist.] 1999, no pet.); *Vandever v. Goettee*, 678 S.W.2d 630, 635 (Tex.App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.). When the record is silent as to what position the complaining party took at trial, it is impossible for a reviewing court to determine whether the trial court abused its discretion by excluding evidence. *Estate of Veale v. Teledyne Indus., Inc.*, 899 S.W.2d 239, 243 (Tex. App.-Houston [14th Dist.] 1995, writ denied).

 Summary judgment procedure incorporates the tenet that a complaint must first be presented to the trial court: "Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." Tex.R. Civ. P. 166a(c). Accordingly, to preserve complaints regarding the exclusion of summary judgment evidence, the proponent must inform the trial court of the purposes for which the evidence was offered and the reasons why it was admissible. *See*

*Brooks v. Sherry Lane Nat'l Bank*, 788 S.W.2d 874, 878 (Tex.App.-Dallas 1990, no writ) (holding that the appellant waived her argument that the trial court erred by sustaining the appellee's objections to her summary judgment affidavit because she did not object in the trial court); *see also Mangione v. Gov't Personnel Mut. Life Ins. Co.*, No. 04-01-00655-CV, 2002 WL 1677457, at *4-*5 (Tex.App.-San Antonio July 24, 2002, pet. denied) (not designated for publication) (agreeing with *Brooks* ).

 Although CI specifies in its appellate brief the purposes for which the evidence was offered and the reasons why it was admissible, the record does not reflect that CI apprised the trial court of these arguments. Therefore, the arguments are not preserved.

### Harmless Error

 We review a trial court's evidentiary rulings in a summary judgment case for abuse of discretion. *Steinkamp v. Caremark*, 3 S.W.3d 191, 194 (Tex.App.-El Paso 1999, pet. denied). A trial court's decision to exclude summary judgment evidence will not result in reversal unless the appellant was harmed by the decision. *See id.* at 197. In other words, we cannot reverse unless the ruling probably caused the rendition of an improper judgment. *Id.*; Tex.R.App. P. 44.1(a)(1).

We have considered all the evidence cited by CI in its brief, including the evidence that was excluded by the trial court. As explained below, we conclude that this evidence fails to raise a genuine issue of material fact regarding at least one element of each of CI's claims. Therefore, even if the propriety of the trial court's evidentiary rulings had been preserved for review and even if those rulings were an

abuse of discretion, the rulings were harmless and not reversible.

CI's second issue is overruled.

## REVIEW OF THE SUMMARY JUDGMENT EVIDENCE

In its first issue, CI argues that the trial court erred in granting summary judgment because there is more than a scintilla of evidence to support its claims for tortious interference with contract, tortious interference with prospective business relations, business disparagement, civil conspiracy, and exemplary damages.

### Standard of Review

We apply a *de novo* standard of review to summary judgments. *Bowen v. El Paso Elec. Co.*, 49 S.W.3d 902, 904 (Tex. App.-El Paso 2001, pet. denied). Because a no-evidence summary judgment is essentially a pretrial directed verdict, we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Id.* at 904–05; *Wyatt v. Longoria*, 33 S.W.3d 26, 31 (Tex.App.-El Paso 2000, no pet.). A no-evidence summary judgment is improper if the nonmovant presents more than a scintilla of probative evidence to raise a genuine issue of material fact. *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex.2003); *Steinkamp*, 3 S.W.3d at 194. More than a scintilla of evidence exists if the evidence would allow reasonable and fair-minded people to differ in their conclusions. *Forbes*, 124 S.W.3d at 172; *Steinkamp*, 3 S.W.3d at 194. Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact. *Forbes*, 124 S.W.3d at 172; *Steinkamp*, 3 S.W.3d at 194. We view the evidence in the light most favorable to the nonmovant. *Forbes*, 124 S.W.3d at 172; *Steinkamp*, 3 S.W.3d

at 194. When, as here, the trial court grants a summary judgment without specifying its reasons, we must affirm if any of the reasons advanced in the motion are meritorious. *Wyatt*, 33 S.W.3d at 30.

### Tortious Interference With Contract

The elements of tortious interference with contract are: (1) the existence of a contract subject to interference; (2) an act of interference that was willful and intentional; (3) the act was a proximate cause of the plaintiff's damages; and (4) actual damages or loss occurred. *Juliette Fowler Homes, Inc. v. Welch Assocs.*, 793 S.W.2d 660, 664 (Tex.1990). The first element requires the existence of a valid contract. *Id.* Although an unenforceable contract may serve as the basis for a tortious interference claim, a void contract may not. *Id.* This Court has held that a contract that is not supported by consideration is void and therefore may not serve as the basis for a tortious interference claim. *Hill v. Heritage Res., Inc.*, 964 S.W.2d 89, 115 (Tex.App.-El Paso 1997, pet. denied).

CI asserts that the Appellees interfered with a contract between it and the Chamber under which the Chamber would assist CI with fund-raising. In its summary judgment response, CI did not direct the trial court to any evidence of consideration for the purported contract. This failure alone is sufficient to support the summary judgment on this cause of action. *See Walton v. City of Midland*, 24 S.W.3d 853, 858 (Tex.App.-El Paso 2000, no pet.), *overruled on other grounds by In re Estate of Swanson*, 130 S.W.3d 144, 147 (Tex. App.-El Paso 2003, no pet.); *see also* TEX.R. CIV. P. 166a(i) ("The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact."). In its appellate brief, CI claims that in

exchange for the Chamber's promise to assist with fund-raising, "CI agreed to use any funds received solely to support CMI, a commitment which benefitted the Chamber and its business members."

Fleager had several meetings with Jurey to discuss whether the Chamber would assist CI with fund-raising. The Chamber sent the fund-raising letter on June 7, 1999. On June 15, 1999, more than a week *after* the letter had already been sent, CI's board passed a resolution providing that CI would honor donors' requests to designate that their donations be used for a particular purpose. CI argues that these facts are circumstantial evidence creating an inference that the board resolution was consideration for the Chamber's promise to assist CI with fund-raising. We disagree.

▮▮▮▮ Consideration is a bargained-for exchange of promises. *Fed. Sign v. Tex. Southern Univ.*, 951 S.W.2d 401, 408 (Tex.1997), *overruled on other grounds by Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex.2001); *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex.1991). It consists of benefits and detriments to the contracting parties. *Fed. Sign*, 951 S.W.2d at 409. The detriments must induce the parties to make the promises and the promises must induce the parties to incur the detriments. *Id.*

CI does not cite any evidence that the Chamber bargained for the board resolution or that the Chamber's promise to assist in fund-raising induced CI to pass the resolution. Although Jurey's testimony indicates that the Chamber's motive for helping CI was to encourage El Pasoans to vote so the city would get more attention from the state and federal governments, his testimony does not mention the board resolution. In fact, his testimony indicates that he did not even know about the reso-

lution, because he stated that Fleager told him the CMI and CS accounts were not segregated. The only testimony regarding the resolution came from Fleager. His testimony does not in any way link the resolution to the Chamber's promise to assist in fund-raising. He also made clear that the resolution was not related to the Appellees' inquiries about whether money donated to CMI might go to CS.

▮▮▮▮ Although circumstantial evidence may be used to establish a fact, "we are not empowered to convert mere suspicion or surmise into some evidence." *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex.1993). At most, the evidence cited by CI would create only a surmise or a suspicion that the board resolution was consideration for the Chamber's promise to assist in fund-raising. *See Forbes*, 124 S.W.3d at 172; *Steinkamp*, 3 S.W.3d at 194. As the supreme court has stated, "[S]ome suspicion linked to other suspicion produces only more suspicion, which is not the same as some evidence." *Browning–Ferris*, 865 S.W.2d at 927.

We conclude that CI failed to point to more than a scintilla of evidence that a contract subject to interference existed. Accordingly, the trial court did not err in granting summary judgment on CI's claim for tortious interference with contract.

### Tortious Interference with Prospective Business Relations

▮▮▮▮ The elements of tortious interference with prospective business relations are: (1) a reasonable probability that the parties would have entered into a contractual relationship; (2) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring; (3) the defendant did the act with a conscious desire to prevent the relationship from occurring or with knowledge that the

interference was certain or substantially certain to occur as a result of his conduct; and (4) the plaintiff suffered actual harm or damage as a result of the interference. *Ash v. Hack Branch Distrib. Co.,* 54 S.W.3d 401, 414–15 (Tex.App.-Waco 2001, pet. denied). To satisfy the second element, the plaintiff must prove that the defendant's conduct would be actionable under an independent tort, but need not prove all the elements of the independent tort. *Wal–Mart Stores, Inc. v. Sturges,* 52 S.W.3d 711, 726 (Tex.2001). For example, the supreme court has stated that a plaintiff may recover for tortious interference from a defendant who makes fraudulent statements about the plaintiff to a third party, without proving that the third party was actually defrauded. *Id.*

■■■ CI asserts that the Appellees engaged in independently tortious conduct by spreading false information about whether CI was capable of maintaining separate accounts between CMI and CS. CI argues that although Ybarra had informed Martinez–Fonts that CMI and CS kept separate accounts, the Appellees told Jurey that the programs' failure to keep separate accounts was a "problem." CI relies on Jurey's proposed letter stating that funds were loaned between the two programs and that the Chamber could not assure its members that donations would be used solely by CMI. CI argues that because Jurey drafted this letter after Martinez–Fonts inquired about the relationship between CMI and CS, one can infer that Martinez–Fonts and the other Appellees made false statements to Jurey regarding the existence of separate accounts.

The record does not support CI's arguments. First, the record reflects that Martinez–Fonts got the information about separate accounts from Ybarra on June 22, which was also the day of the personnel committee meeting and the day Jurey

drafted the letters. Jurey testified that Jim Haines, the chairman-elect of the Chamber's board, asked him to draft the letter, and that the information in the letter came from Fleager and Schwartz. Martinez–Fonts testified that he told Jurey he did not think the Chamber should send the letter, and the letter was never sent. Moreover, given Fleager's testimony regarding the loan from CS to CMI, it does not appear that the letter contains any false information.

In short, CI has raised nothing more than a suspicion that the Appellees spread false information about it. Therefore, the trial court did not err in granting summary judgment on CI's claim for tortious interference with prospective business relations.

### *Business Disparagement*

■■■ The elements of business disparagement are: (1) the defendant published false and disparaging information about the plaintiff; (2) with malice; (3) without privilege; and (4) that resulted in special damages to the plaintiff. *Forbes,* 124 S.W.3d at 170. Regarding the first element, the false and disparaging information must amount to a statement of fact. *See Prudential Ins. Co. v. Fin. Review Servs.,* 29 S.W.3d 74, 82 (Tex.2000).

■■■ CI asserts that the Appellees published false and disparaging information about it by telling Jurey that "there was a problem with CI, in that it could not maintain separate accounts between CMI and [CS]." This is essentially the same as CI's argument regarding the second element of tortious interference with prospective business relations and it fails for the same reason. As we have already discussed, there is no evidence that the Appellees told anyone that CI could not maintain separate accounts between CMI and CS. Instead, Martinez–Fonts simply inquired

as to whether there were separate accounts for the two programs.

Because there is no evidence that the Appellees published a false and disparaging fact about CI, the trial court did not err in granting summary judgment on CI's claim for business disparagement.

### Civil Conspiracy

Liability for civil conspiracy depends upon participation in an underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable. *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex.1996). Therefore, if the plaintiff fails to raise a fact question as to the liability of at least one of the defendants for an underlying tort, it is proper to render a summary judgment against the plaintiff on a civil conspiracy claim. *See Gonzales v. Am. Title Co.*, 104 S.W.3d 588, 594 (Tex.App.-Houston [1st Dist.] 2003, pet. denied); *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 864 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). Because the trial court properly rendered summary judgment on CI's underlying tort claims, it did not err in also granting summary judgment on CI's claim for civil conspiracy.

### Exemplary Damages

Recovery of exemplary damages requires a finding of an independent tort with accompanying actual damages. *Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex.1998); *Eberle v. Adams*, 73 S.W.3d 322, 339 (Tex.App.-Houston [1st Dist.] 2001, pet. denied). As with the civil conspiracy claim, because the trial court properly rendered summary judgment on all of CI's tort claims, it did not err in also granting summary judgment on CI's claim for exemplary damages.

CI's first issue is overruled.

### CONCLUSION

For the reasons stated herein, the judgment of the trial court is affirmed.