IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00265-CV

 

Chesapeake Exploration Limited 

Partnership, Hallwood Energy III, LP, 

and Chesapeake Sigma, LP,

                                                                                    Appellants

 v.

 

Corine Incorporated and Drewland 

Enterprises, Inc.,

                                                                                    Appellees

 

 



From the 413th District Court

Johnson County, Texas

Trial Court No. C-2006-00419

 



MEMORANDUM  Opinion










 

            Chesapeake Exploration Limited
Partnership, Hallwood Energy III, LP, and Chesapeake Sigma, LP (collectively
referred to as Chesapeake) appeal the decision of the trial court granting a
partial summary judgment in favor of Corine Incorporated and Drewland
Enterprises, Inc. (collectively referred to as Corine) and entering a
declaratory judgment that the oil and gas lease held by Chesapeake terminated
at the expiration of its primary term in September of 2003.  Because the trial
court did not err in granting the motion for partial summary judgment, we
affirm.

Background

            Corine’s predecessors in interest of
877 acres in Johnson County, Texas executed an oil and gas lease with Chesapeake’s predecessor in interest.  The lease had a primary term of three years which
was extended for another three years.  Drilling of the Colmer Well began in
August of 2001 on property adjacent to Corine’s property.  It was completed in
March of 2002 and shut in a few days later.  In June of 2002, the Colmer Gas
Unit was formed which pooled Corine’s property into the unit.  The Colmer Well
was the only well existing in the Colmer Gas Unit.  The primary term of Chesapeake’s lease expired on September 4, 2003.  No activity occurred on the Comer Well
until September of 2004.

            Corine sued Chesapeake and filed a
motion for partial summary judgment.  The basis for the motion was that the
lease covering Corine’s property terminated at the expiration of its primary
term because there was no well capable of producing in paying quantities on the
property, or in the unit, at the end of the lease’s primary term.  The trial
court granted Corine’s motion, which became final for the purposes of appeal
when the trial court issued an agreed order of severance and abatement.  Chesapeake appealed arguing, primarily, that the trial court erred in granting the partial
summary judgment because the Colmer well was a well capable of producing in
paying quantities.

            We review a summary judgment de novo. 
 Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  We take as true all evidence favorable to the nonmovant, and we indulge every
reasonable inference and resolve any doubts in the nonmovant's favor.  Id.

Objections to Affidavit

            However, before we can determine
whether the trial court erred in granting Corine’s motion for summary judgment,
we must first decide Chesapeake’s fourth issue in which it contends the trial
court erred in sustaining Corine’s objections to the affidavit of Jim
Govenlock, effectively striking the entire affidavit.  

            Chesapeake attached the affidavit to
its response to Corine’s motion for partial summary judgment.  Corine filed
thirty-two objections to portions of the affidavit.  Two weeks later, the trial
court granted Corine’s motion for partial summary judgment and sustained each
of the thirty-two objections, leaving little left of the affidavit.  

            An appellate court reviews a trial
court's ruling that sustains an objection to summary judgment evidence for an
abuse of discretion.  Cantu v. Horany, 195 S.W.3d 867, 871 (Tex. App.—Dallas 2006, no pet.).  An appellant has the burden to show the trial court
abused its discretion when it sustained the appellee's objections to the
summary judgment evidence.  See id.  

            Chesapeake brings an issue complaining
generally about the rulings on the objections to the affidavit but does not
complain specifically about any of the individual rulings.  Accordingly, Chesapeake’s fourth issue, because it presents nothing for review, is overruled.[1] 


            With this ruling in mind, we proceed
to a determination of Chesapeake’s summary judgment issues.

Capable of Production in
Paying Quantities

            In two issues, Chesapeake argues that
the termination of the lease was error because the trial court failed to
consider whether the Colmer Well was capable of producing in paying quantities
“at the time it was shut in.”  Corine contends that the operative time to
determine whether the well was capable of producing in paying quantities was at
the end of the lease’s primary term.  Neither party contends the lease is
ambiguous.

            Construing an unambiguous lease is a
question of law for the Court.  Anadarko Petroleum Corp. v. Thompson, 94
S.W.3d 550, 554 (Tex. 2002).  In construing an unambiguous lease, our primary
duty is to ascertain the parties' intent as expressed within the lease's four
corners. Id.  We give the lease's language its plain, grammatical
meaning unless doing so would clearly defeat the parties' intentions.  Id.  We examine the entire lease and attempt to harmonize all its parts, even if
different parts appear contradictory or inconsistent.  Id.  That is
because we presume that the parties to a lease intend every clause to have some
effect.  Id.  When a lease terminates is a question of resolving the
intention of the parties from the entire lease.  Id.  

            The lease term in question provides:

If at the end of the primary term or any time thereafter one or more wells on the
leased premises or lands pooled therewith are capable of producing oil or gas
or other substances covered hereby in paying quantities, but such well or wells
are either shut in or production therefrom is not being sold by Lessee, such
well or wells shall nevertheless be deemed to be producing in paying quantities
for the purpose of maintaining this lease.

 

(Emphasis added).  The center of the controversy
for the parties is at what point in time does the well need to be capable of
production in paying quantities?  Chesapeake argues that the well needed to be
capable of production in paying quantities at the time it was shut in. 
However, Corine argues the well needed to be capable of production in paying
quantities at the end of the primary term.  

            Chesapeake relies on a case from Amarillo in arguing that the time to determine the production capability of the well is at
the time the well is shut in.  Granted, the court’s opinion states, “for a well
to be maintained by the payment of shut-in royalties, it must be capable of
producing gas in paying quantities at the time it is shut-in.”  Hydrocarbon
Mgmt. v. Tracker Exploration, 861 S.W.2d 427, 432-433 (Tex. App.—Amarillo
1993) (emphasis added).  However, that statement is distinguishable for several
reasons.  First, the Amarillo Court was not deciding the temporal issue present
in this appeal.  It was deciding what the phrase “capable of producing in
paying quantities” meant.  Second, the well in the Amarillo case had been shut
in during the secondary term of the lease, not during the primary term
as in this appeal.  Chesapeake also relies on an opinion by the 5th Circuit for
the same proposition.  See Duke v. Sun Oil Co., 320 F.2d 853 (5th
Cir. 1963).  Again, the well in Duke was shut in during the secondary
term of the lease, not during the primary term.[2]  

            Here, the Colmer Well had been shut in
during the primary term of the lease, not during the secondary term of
the lease.  The primary term of the lease was “paid up” and there was nothing
needed, such as shut in royalty payments, to hold the lease during the primary
term.  If a well is shut in during the secondary term, the time to determine
its capability of producing in paying quantities might necessarily be at the
time it was shut in.  But given the plain language of the lease here, the time
to determine whether the well was capable of production in paying quantities
was at the end of the primary term.[3]   If
the parties had intended otherwise, it would have been simple to include that
intention in the lease.  

            Therefore, based on the plain language
of the lease, the operative time to determine whether this well was capable of
producing in paying quantities was at the end of the lease’s primary term, and
the trial court did not err in terminating the lease for that reason.  Chesapeake’s first and second issues are overruled.

            Chesapeake next argues that the trial
court erred in granting the summary judgment because fact issues existed as to
whether the well was capable of producing in paying quantities at the end of
the primary term.  

            A well is capable of production if it
is capable of producing in paying quantities without additional equipment or
repairs.  Anadarko Petroleum Corp. v. Thompson, 94 S.W.3d 550, 558 (Tex. 2002).  That is, “capable of producing in paying quantities” means a well that will produce
in paying quantities if the well is turned "on," and it begins
flowing, without additional equipment or repair.  Hydrocarbon Mgmt. v.
Tracker Exploration, 861 S.W.2d 427, 433-434 (Tex. App. 1993).  Conversely,
a well would not be capable of producing in paying quantities if the well
switch were turned "on," and the well did not flow, because of
mechanical problems or because the well needs rods, tubing, or pumping
equipment.  Id. at 434.  

            Corine produced summary judgment
evidence that showed the Colmer Well was not equipped with rods, tubing, or
pumping equipment when the primary term of the lease ended.  By deposition, Chesapeake admitted that those pieces of equipment were necessary for the well to produce
in paying quantities.  Chesapeake further admitted that as of the end of the
primary term, the well did not have the equipment necessary to make it a well
capable of producing in paying quantities.  Further equipment was needed to be
installed before the well was capable of producing in paying quantities.  

            Chesapeake attached an affidavit of
Jim Govenlock to its response to the motion for partial summary judgment in an
attempt to explain his deposition answers.  However, the trial court struck all
of the attempts to explain, and we have already determined that Chesapeake presents nothing for review regarding the trial court’s action.  Thus, there
was no contrary evidence which would create a fact issue as to whether the well
was capable of production in paying quantities at the end of the primary term
of the lease.  The trial court did not err in granting summary judgment and Chesapeake’s third issue is overruled.

Conclusion

            Having overruled all issues necessary
to dispose of this appeal,[4] we
affirm the judgment of the trial court.

 

                                                                                    TOM
GRAY

                                                                                    Chief
Justice

 

Before
Chief Justice Gray,

            Justice
Vance, and

            Justice
Reyna

Affirmed

Opinion
delivered and filed August 29, 2007

[CV06]









[1]               Corine
also contends Chesapeake waived its right to complain about the trial court’s
rulings on Corine’s objections.

                To preserve complaints regarding the
exclusion of summary judgment evidence, the proponent must inform the trial
court of the purposes for which the evidence was offered and the reasons why it
was admissible.  Cmty. Initiatives, Inc. v. Chase Bank, 153 S.W.3d 270,
281 (Tex. App.—El Paso 2004, no pet.).  See Mangione v. Gov't
Personnel Mut. Life Ins. Co., 2002 Tex. App. LEXIS 5172, No.
04-01-00655-CV, at *10-*14 (Tex. App.—San Antonio July 24, 2002, pet. denied)
(not designated for publication); see also Brooks v. Sherry Lane Nat'l Bank,
788 S.W.2d 874, 878 (Tex. App.—Dallas 1990, no writ).  By failing to object in
the trial court, the proponent waives the right to complain on appeal about the
trial court's ruling.  Cantu v. Horany, 195 S.W.3d 867, 871 (Tex. App.—Dallas 2006, no pet.); Cruikshank v. Consumer Direct Mortg., Inc., 138
S.W.3d 497, 500 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).

                Chesapeake did not respond to Corine’s
objections.  After the trial court sustained the objections and granted a
partial summary judgment, Chesapeake did not ask the trial court to reconsider
its ruling, even when two months passed before the trial court issued a
severance order making the order granting partial summary judgment final and
appealable.  Thus, Chesapeake has waived its right to complain on appeal about
the trial court’s ruling, and for this reason as well, its fourth issue is
overruled.





[2]               Chesapeake
mentions in a footnote another case in support of its argument, Mitchell v.
Mesa Petroleum Co., 594 S.W.2d 507 (Tex. App.—San Antonio, writ ref’d
n.r.e.).  The lease provision in Mitchell is different than the lease
provision in this appeal.  In Mitchell, shut in royalty payments were to
be made prior to the expiration of the primary term of the lease.  Here, the
parties agree that shut in royalty payments were to begin at the end of the
primary term.  And although the well was shut in during the primary term in Mitchell,
the court was not deciding the same issue as has been presented to us.  Further,
the description relied on by Chesapeake was in an alternate holding of the
court and is, therefore, dicta.

 





[3]               Chesapeake makes an argument that the same phrase “at the end of the primary term” excuses
shut in royalty payments until the end of the primary term.  The phrase cannot
be used to determine the timing of shut in royalty payments and then ignored to
determine the timing of when a well is capable of production in paying
quantities.  





[4]               Chesapeake’s fifth issue is dependent upon our sustaining its first three issues.  Because
we have overruled the issues, we need not determine this fifth issue.