COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

JOYCELINE MILLS,                                           )

                                                                              )              
No.  08-04-00335-CV

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )               
346th District Court

DR. JOHN PATE, M.D.,                                      )

                                                                              )           
of El Paso County, Texas

Appellee.                           )

                                                                              )                   (TC# 2003-297)

                                                                              )

 

 

O
P I N I O N

 

Appellant
Joyceline Mills appeals the trial court=s
order granting of the motions for summary judgment in favor of Appellee Dr.
John Pate, M.D.  On appeal, Ms. Mills
contends that the trial court erred in granting Dr. Pate=s
traditional and no-evidence motions for summary judgment and erred in
overruling her objection to Dr. Pate=s
no-evidence motion as general and conclusory. 
We affirm in part, reverse in part, and remand the cause to the trial
court.








In 1999, Ms. Mills
decided that she wanted to have liposuction performed.  After hearing Dr. Pate=s
radio advertising that he was board certified, an expert in liposuction, and
could change one=s life,
Ms. Mills made an appointment with him. 
Her first consultation with Dr. Pate was on September 29, 1999.  She was forty-six years= old at the time.  Ms. Mills told Dr. Pate that she wanted to
remove the fat bulges she had on her abdomen, hips, and thighs.  Ms. Mills recalled that Dr. Pate told her she
was going to be beautiful after having liposuction, which to her meant smooth
skin and no Apooches.@ 
When he told her she would be beautiful, they were discussing the bags
and sags being gone.  Dr. Pate=s staff showed her post-procedure
photographs of other patients and she observed that they had smooth skin and no
saddlebags.  Dr. Pate told Ms. Mills that
all the little bulges and sags in her skin would be taken care of through the
liposuction procedure.  With regard to
her skin tone, she was told that she had beautiful or wonderful skin.

According to Dr.
Pate=s
examination notes from the first office visit, he explained the liposuction
technique, the incisions, risks, and complications of surgery and
anesthesia.  The notes also indicate that
he explained to her that long-term results may require a small crescent tuck to
the abdomen or medial thigh lift because her skin tone was only fair.  Ms. Mills was also allegedly told that the
quality of her skin would not change after liposuction and that irregularities
frequently occur.

Ms. Mills,
however, stated that Dr. Pate never told her about any kind of possible risks
of the procedure, although he did give her a brochure to read and sign, which
she did.  According to Ms. Mills, Dr.
Pate never told her about the potential need for further procedures, never told
her that there might be rippling or other irregularities to her skin following
liposuction, and never discussed any possible adverse effects with her.  Specifically, she was never told that because
of her age and her history of smoking, that she could have sagging skin or
ripples.

On November 17,
1999, Ms. Mills signed an informed consent form and a permission to perform
surgery form.  In the treatment section,
the informed consent form states:








Usually, only one treatment is
necessary to improve body contours to both my satisfaction, as well as the
patient=s
satisfaction.  In 4 or 5% of my patients
(4 or 5 of every 100), a touch-up procedure following the surgery, usually
after approximately 6 months, is necessary to maximize the cosmetic
benefit.  If this touch-up procedure is
done at the Surgical Center I do not charge the patient for the touch-up
procedure, however the Surgical Center does charge for this procedure, and
there may be further anesthetic charges as well.

 

The consent form listed the
following possible side effects from the liposuction procedure: discomfort,
bruising, pigment change, scarring, swelling for up to six months.  The form also warned of possible serious complications
from the surgery.  Dr. Pate conceded that
the consent form does not tell the patient that the quality of her skin will
not change and that she may have ripples, indentations, or abdominal
abnormalities after liposuction.

On December 2,
1999, Dr. Pate performed his first liposuction procedure on Ms. Mills, which
consisted of surgery on her abdomen, hips, flanks, and thighs.  The evidence supports a reasonable inference
that Ms. Mills was charged for the first surgery.  Ms. Mills followed all of Dr. Pate=s post-operative instructions.  Ms. Mills expected swelling post-operatively
based on what Dr. Pate had told her.  Ms.
Mills noticed swelling as well as some bruising in the first week after the
surgery.  As the swelling subsided, three
or four months after the procedure, she began to notice irregularities in her
skin.  Specifically, she had two distinct
rolls under her right breast in the upper abdomen area and the skin on her
thighs was sagging in the front and inside, down to her kneecaps.








Within six months
of the first surgery, Ms. Mills began complaining to Dr. Pate=s staff about the irregularities.  She was told that it was swelling and was
specifically told by Dr. Pate not to worry because the swelling would go
away.  After six months, it was becoming
more apparent to her that the irregularities were not just swelling.  At this point, Ms. Mills became unhappy with
the results of the first liposuction procedure. 
When Ms. Mills expressed her concerns to Dr. Pate=s
staff, she was cautioned to express them very delicately to Dr. Pate or else he
would not repair it.  After the six-month
period, Ms. Mills delicately mentioned to Dr. Pate that the irregularities, the
abdominal rolls in particular, could no longer be swelling by that point in
time and expressed her dissatisfaction to him. 
Dr. Pate told her, A[p]ay
me to do a thigh lift and I=ll
touch it up.@  It was her understanding that Dr.  Pate would perform a second surgery,
consisting of a medial thigh lift and a touch-up on the liposuction,
specifically the abdomen rolls and a bulge on her left hip.  He would charge for the medial thigh lift and
do the touch-up procedure free of charge. 
Dr. Pate never told her prior to the first liposuction procedure that
she might need a thigh lift, although Ms. Mills recalled that the disclosure
mentioned it.

On January 9,
2001, Ms. Mills signed an informed consent form for the second surgery and on
January 16, 2001, the day of surgery, Ms. Mills signed a form consenting to
lower abdominal bilateral hip flank liposuction and the thigh lift.  The January 16 consent form for the second
surgery specifically disclosed the following risks:  Adissatisfaction
with cosmetic results . . . possible need of future revision to
obtain improved results, poor wound healing, recurrence of the original
condition, and uneven contour.@  It was Ms. Mills=
understanding that the second liposuction was just touch-up work.  Dr. Pate told her that the thigh lift would
take care of the baggy/saggy skin. 
Again, Dr. Pate did not talk to her about any risks from the procedure
and neither did his staff.








After the second
surgery, Ms. Mills felt soreness in the abdomen and around the incision on her
legs.  Ms. Mills was unhappy with the
second procedure, but again was told for several months that it was swelling,
but it was not swelling.  Ms. Mills
noticed that she still had some bagging and sagging after the thigh lift.  When Ms. Mills told Dr. Pate that the rolls
had moved from her right side to her left, below her navel, she was told it was
swelling, but they did not go away.  She
did not look the way Dr. Pate told her she would look after the second
procedure.  He had described smooth skin,
no ripples, bulges, and bags, but there was definite bagging on her left thigh,
rippling and a bulge on her left abdomen, and a bulge on her right thigh.  Further, her hips were disproportionate.

Ms. Mills had her
last appointment with Dr. Pate on August 30, 2001.  At that time, Dr. Pate told Ms. Mills
that she should have paid him to do a tummy tuck or abdominoplasty.  He had never mentioned to her that she might
need such a procedure; in fact, at the initial consultation, Dr. Pate had told
her that he did not think she would need a tummy tuck.[1]








A month later, Ms.
Mills went to see Dr. Miller, a plastic surgeon, who told her he could probably
fix her complaints -- the rippling in her abdomen and the unevenness in her
thighs--with a minimum of three surgeries. 
Ms. Mills told Dr. Miller that she looked and felt horrible.  Dr. Miller referred Ms. Mills to Dr.
Gilliland in Houston because he specializes in body contouring and could
provide her with better results.  In her
consultation with Dr. Gilliland a month later, he told her that it would take a
body lift to correct the irregularities resulting from the liposuction
procedures.  A body lift or
circumferential abdominoplasty is a much more extensive procedure than
liposuction, which entails a circumferential incision around the body, leaving
a bikini-line scar.  Dr. Gilliland told
Ms. Mills that Dr. Pate=s
care and treatment of her had been inadequate. 
Dr. Gilliland also told her that her post-operative care would be more
extensive than Dr. Pate=s.

Dr. Gilliland
performed an abdominoplasty and body lift, which included re-doing the thigh
lift.  Ms. Mills was satisfied with the
results of Dr. Gilliland=s
work aside from the scar and was happy with the shape of her body.  The rippling and the rolls were gone.  Her thighs were slimmed and her abdomen was
flattened and smooth.  If she had
achieved her present body shape after her first surgery with Dr. Pate, she
would not have had any other procedures. 
Ms. Mills believed that it was the body shape that she could have had,
had the liposuction been done properly. 
If she had known when she first consulted with Dr. Pate that a body lift
was going to be required in order to achieve the results she wanted, she would
not have had the procedure.

On January 23,
2002, Ms. Mills notified Dr. Pate of her intent to sue under the Medical
Liability and Insurance Improvement Act (Athe
Act@). 
On January 23, 2003, Ms. Mills filed suit against Dr. Pate for medical
malpractice.  Specifically, Ms. Mills
alleged that Dr. Pate was negligent by failing to properly warn and obtain her
informed consent with respect to the probable outcome of the liposuction
procedures and the need for future treatment and by causing and failing to
correct the abdominal irregularities. 
Ms. Mills later amended her petition to include a breach of express
warranty claim.








Dr. Pate filed a
traditional motion for partial summary judgment with regard to Ms. Mills= consent claims to the December 1999
liposuction surgery, arguing that these claims were barred by the two-year
statute of limitations contained in Section 10.01 of Article 4590i.  Dr. Pate also filed an amended Ano evidence@
motion for partial summary judgment, alleging that there was no evidence to
support the essential elements of Ms. Mills=
remaining claims.  The trial court
overruled Ms. Mills=
objection to the no-evidence motion as an improper general and conclusory
motion.  The trial court sustained all of
Dr. Pate=s
objections to Ms. Mills=
summary judgment evidence from Dr. Gilliland=s
testimony with respect to the appropriate standard of care.  The trial court in a final order granted both
of Dr. Pate=s motions
for summary judgment.  Ms. Mills now
appeals the summary judgment as to her informed consent and breach of express
warranty claims.

Standards
of Review








The trial court
granted both a traditional motion for summary judgment and a Ano‑evidence@ summary judgment.  See Tex.R.Civ.P.
166a(c), (i).  In a traditional summary
judgment proceeding, the standard of review on appeal is whether the successful
movant at the trial level carried the burden of showing that there is no
genuine issue of material fact and that judgment should be granted as a matter
of law.  Lear Siegler, Inc. v. Perez,
819 S.W.2d 470, 471 (Tex. 1991); Wyatt v. Longoria, 33 S.W.3d 26, 31
(Tex.App.‑- El Paso 2000, no pet.). 
Thus, the question on appeal is not whether the summary judgment proof
raises fact issues as to required elements of the movant=s
cause or claim, but whether the summary judgment proof establishes, as a matter
of law, that there is no genuine issue of material fact as to one or more
elements of the movant=s
cause or claim.  Gibbs v. General
Motors Corp., 450 S.W.2d 827, 828 (Tex. 1970); Wyatt, 33 S.W.3d at
31.  In resolving the issue of whether
the movant has carried this burden, all evidence favorable to the nonmovant
must be taken as true and all reasonable inferences, including any doubts, must
be resolved in the nonmovant=s
favor.  Nixon v. Mr. Property
Mgmt. Co., Inc., 690 S.W.2d 546, 548‑49 (Tex. 1985).  A defendant moving for summary judgment on a
statute of limitations affirmative defense must prove conclusively the bar of
limitations.  See Jennings v. Burgess,
917 S.W.2d 790, 793 (Tex. 1996); Zale Corp. v. Rosenbaum, 520 S.W.2d
889, 891 (Tex. 1975).  If the nonmovant
asserts that a tolling provision applies, the movant must conclusively negate
the tolling provision=s
application to show his or her entitlement to summary judgment.  See Zale Corp., 520 S.W.2d at 891.

A no‑evidence
summary judgment under Tex.R.Civ.P.
166a(i) is essentially a pretrial directed verdict, and a reviewing court
applies the same legal sufficiency standard. 
Wyatt, 33 S.W.3d at 31. 
The party moving for summary judgment on this basis must specifically
state the elements as to which there is no evidence.  See Tex.R.Civ.P.
166a(i).  The burden then shifts to the
non‑movant to produce evidence raising a fact issue on the challenged
elements.  Id.  When reviewing a no‑evidence summary
judgment, the reviewing court views the evidence in the light most favorable to
the non‑movant, disregarding all contrary evidence and inferences.  Merrell Dow Pharmaceuticals, Inc. v.
Havner, 953 S.W.2d 706, 711 (Tex. 1997). 
A no‑evidence summary judgment is improperly granted if the
respondent brings forth more than a scintilla of probative evidence to raise a
genuine issue of material fact.  King
Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003).  Less than a scintilla of evidence exists when
the evidence is so weak as to do no more than create a mere surmise or
suspicion of a fact.  Kindred v.
Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983).  More than a scintilla of evidence exists when
the evidence rises to a level that would enable reasonable, fair‑minded
persons to differ in their conclusions.  Havner,
953 S.W.2d at 711.  In a case where the
trial court=s
judgment does not specify the ground or grounds relied upon for its ruling, the
summary judgment must be affirmed if any of the theories advanced is
meritorious.  Carr v. Brasher, 776
S.W.2d 567, 569 (Tex. 1989).








Statute
of Limitations 

In her first
issue, Ms. Mills contends that the trial court erred in granting Dr. Pate=s traditional motion for summary
judgment based on the statute of limitations because a genuine issue of
material fact exists as to whether her injuries arose from a course of
treatment rather than from a discrete occurrence.  Further, Ms. Mills asserts that a fact issue
exists as to whether Dr. Pate fraudulently concealed Ms. Mills= claims from her.

In his motion for
summary judgment, Dr. Pate alleged that Ms. Mills=
complaints relating to her consent to the December 2, 1999 liposuction surgery
were barred by the two-year statute of limitations under the Act.  Former Article 4590i, section 10.01 of the
Texas Revised Civil Statutes governs this case because it was filed before
September 1, 2003.[2]  The former statute created an absolute
two-year limitations period in which to file suit on health care liability
claims.  See former Tex.Rev.Civ.Stat. art. 4590i, ' 10.01; Kimball v. Brothers, 741
S.W.2d 370, 372 (Tex. 1987).  Former Tex.Rev.Civ.Stat. art. 4590i, section
10.01, in pertinent part, provides:

Notwithstanding any
other law, no health care liability claim may be commenced unless the action is
filed within two years from the occurrence of the breach or tort or from the
date the medical or health care treatment that is the subject of the claim or
the hospitalization for which the claim is made is completed . . . .








Tex.Rev.Civ.Stat.
art. 4590i, ' 10.01.

 

Under Section
10.01, the statute of limitations begins to run on one of three possible
dates:  (1) the date of the occurrence of
the breach or tort; (2) the last date of the relevant course of treatment; or
(3) the date of the hospitalization.  Shah
v. Moss, 67 S.W.3d 836, 841 (Tex. 2001). 
A plaintiff may not choose the most favorable date that falls within
Section 10.01=s three
categories.  Id.  Rather, if the date the alleged tort occurred
is ascertainable, limitations must begin on that date.  Id.; see also Earle v. Ratliff,
998 S.W.2d 882, 886 (Tex. 1999).  Thus,
if the date is ascertainable, further inquiry into the second and third
categories is unnecessary.  Shah,
67 S.W.3d at 841.  If the date is not
ascertainable, the plaintiff must establish a course of treatment for the
alleged injury, in which the last treatment date becomes relevant to
determining when limitations begins.  Id.  However, if the date of the alleged tort is
ascertainable, limitations begins to run on the ascertainable date irrespective
of whether the plaintiff established a course of treatment.  Id.

When a claim
accrues is a question of law, and not one of fact.  Chambers v. Conaway, 883 S.W.2d 156,
159 (Tex. 1993).  For purposes of the
application of limitation statutes, a cause of action generally accrues when
the wrongful act effects an injury, regardless of when the plaintiff learned of
the injury.  Moreno v. Sterling Drug,
Inc., 787 S.W.2d 348, 351 (Tex. 1990). 
In this case, Dr. Pate moved for traditional summary judgment on Ms.
Mills= informed
consent claims related to the December 2, 1999 liposuction surgery only.








Ms. Mills filed
her medical malpractice suit on January 23, 2003.  In her suit, Ms. Mills alleged that Dr. Pate
failed to adequately disclose information to her regarding the two liposuction
procedures and if he had disclosed the risks and hazards inherent in the
procedures, she would have refused such treatment.  The record shows that Ms. Mills first
consulted with Dr. Pate on September 29, 1999.  On November 17, 1999, Ms. Mills signed an
informed consent form and a permission to perform surgery form for the 1999
liposuction surgery.  Ms. Mills claimed
that she was never told by Dr. Pate about the potential need for further
procedures, never told that there might be rippling or other irregularities
following liposuction, and was never told of possible adverse effects, like
sagging skin and ripples.  Further, Dr.
Pate never disclosed to her that factors such as her age and smoking history
could result in sagging skin or ripples. 
Dr. Pate performed the first liposuction surgery on Ms. Mills on
December 2, 1999.  Here, the date of the
alleged breach or tort with regard to the informed consent claims is readily
ascertainableB December
2, 1999, the date of surgery, that is, the last date that Dr. Pate failed to
obtain Ms. Mills=
informed consent before performing the first liposuction surgery.  Because the date of the alleged tort with
respect to the informed consent claims related to the first liposuction surgery
is ascertainable, whether a course of treatment existed for Ms. Mills= injuries due to post-operative care
and treatment is immaterial to our analysis. 
Therefore, we conclude that unless the record reveals a fact issue
regarding fraudulent concealment, Ms. Mills=
informed consent claims related to the first surgery are barred by the statute
of limitations.

Fraudulent
Concealment








Fraudulent
concealment is an equitable doctrine that estops a defendant from relying on
the statute of limitations as an affirmative defense to a plaintiff=s claim.  Shah, 67 S.W.3d at 841; Borderlon
v. Peck, 661 S.W.2d 907, 908 (Tex. 1983). 
Fraudulent concealment tolls the limitations in a medical negligence
case until the patient discovers the fraud or could have discovered the fraud
with reasonable diligence.  Shah,
67 S.W.3d at 841; Earle, 998 S.W.2d at 888; Borderlon, 661 S.W.2d
at 908.  Proof of fraudulent concealment
requires more than evidence that the physician failed to use ordinary
care.  Earle, 998 S.W.2d at
888.  In order to establish fraudulent
concealment, the plaintiff must show the health-care provider actually knew a
wrong occurred, had a fixed purpose to conceal the wrong, and did conceal the
wrong from the patient.  Shah, 67
S.W.3d at 841; Earle, 998 S.W.2d at 887.

Ms. Mills= fraudulent concealment claim is based
on the following evidence:  (1) Dr. Pate
knew that she had abdominal irregularities after the first surgery; (2) Dr.
Pate added Auneven
contour@ to the
list of possible adverse effects in the informed consent form for the second
surgery, a risk that was not disclosed before the first surgery; and (3) Dr.
Pate considered such irregularities an expected result from the surgery, but
nevertheless, reassured Ms. Mills that the post-operative irregularities were
just swelling.  Ms. Mills argues that
this evidence raises a fact issue as to whether Dr. Pate fraudulently concealed
from her the fact that he had wronged her, by misrepresenting to her that the
irregularities were merely swelling, tolling limitations until August
2001.  Despite her contentions, however,
there is simply no evidence that when Dr. Pate told Ms. Mills that the
complained-of irregularities from the first surgery were just swelling, he did
so in order to conceal the wrong done to her, therefore the evidence fails to
show that Dr. Pate had a fixed purpose to conceal the alleged wrong.  See e.g., Shah, 67 S.W.3d at
846 (physician=s
assurances related to the healing process did not show or suggest that the
assurances were made to conceal a known wrong or to deceive plaintiff).








Even if we were to
agree with Ms. Mills that the evidence raises a fact issue as to her fraudulent
concealment claim, we would conclude that she cannot rely on the tolling
doctrine of fraudulent concealment to suspend limitations until August
2001.  Here, the record undisputedly shows
that six months after the December 2, 1999 surgery, Ms. Mills knew that the
irregularities resulting from the first procedure were not just swelling.  Ms. Mills expressed her concerns to Dr. Pate
and specifically told him that the irregularities could no longer be attributed
to swelling by that point in time.  As
previously stated, the fraudulent concealment tolls limitations until the
plaintiff discovers the fraud or could have discovered the fraud with reasonable
diligence.  Shah, 87 S.W.3d at
841, citing Velsicol Chem. Corp. v. Winograd, 956 S.W.2d 529, 531
(Tex. 1997).  AThe
estoppel effect of fraudulent concealment ends when a party learns of facts,
conditions, or circumstances which would cause a reasonably prudent person to
make inquiry, which, if pursued, would lead to discovery of the concealed cause
of action.@  Borderlon, 661 S.W.2d at 909.  By her own admission, Ms. Mills lost
confidence in Dr. Pate=s
explanations for the irregularities she observed in her body=s appearance six months after the first
surgery.  Thus, the estoppel effect, if
any, ended in June 2001, not August 2001, and her informed consent claims
relating to the first surgery would still be barred by limitations.  

We conclude the
trial court correctly granted Dr. Pate=s
traditional summary judgment motion because the informed consent claims relating
to the first surgery were barred by the statute of limitations and Ms. Mills
failed to present sufficient evidence to raise a fact issue on her fraudulent
concealment claim.  Issue One is
overruled.

Specificity
of Summary Judgment Motion

In her second
issue, Ms. Mills contends that the trial court erred in overruling her
objection to Dr. Pate=s
no-evidence motion for summary judgment and thus, should not have granted that
motion because it was general or conclusory -- the type of no-evidence motion
that is specifically barred under Rule 166a(i).








Texas Rule of
Civil Procedure 166a(i) requires that the no-evidence summary judgment motion Astate the elements as to which there is
no evidence.@  See Tex.R.Civ.P.
166a(i).  The comments to Rule 166a(i)
which are Aintended
to inform the construction and application of the rule,@
states, A[t]he
motion must be specific in challenging the evidentiary support for an element
of a claim or defense; paragraph (i) does not authorize conclusory motions or
general no‑evidence challenges to an opponent=s
case.@  See Tex.R.Civ.P.
166a(i) cmt.  Thus, under the rule, a
no-evidence summary judgment motion must state the specific elements as to
which there is no evidence, that is, it must not be general or conclusory.  See Tex.R.Civ.P.
166a(i); Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 207
(Tex. 2002); In re Estate of Swanson, 130 S.W.3d 144, 147 (Tex.App.--El
Paso 2003, no pet.).

Ms. Mills
complains that Dr. Pate=s
no-evidence motion for partial summary judgment was general and conclusory
because it challenged every element of her remaining claims in the
lawsuit.  Reviewing the no-evidence
motion, we note that the introduction states that the motion addresses the
remainder of Ms. Mills=
claims, including her breach of express warranty claim.  In the argument section, Dr. Pate identified
the following claims for which he alleged Ms. Mills had no evidence:  informed consent claims related to the
January 2001 procedure; ordinary negligence claims, including the
post-operative care and treatment claims; and the breach of express warranty
claim.  With regard to the remaining
informed consent claims, the motion states:

Plaintiff lacks evidence of every
element of informed consent to the January 2001 procedure.  She has no evidence of duty, breach,
causation, or harm relating to the touch-up liposuction and thigh lift.  Further, the injury she complains of, the
abdominal rippling is dissatisfaction with cosmetic appearance and uneven
contour, which were risks that were expressly disclosed to her.








For the ordinary negligence claims,
the motion states, APlaintiff
has no evidence of duty, breach, cause or harm,@
specifically noting deficiencies in the deposition testimony of Ms. Mills= expert on the alleged breach of the
standard of care.  With regard to the
breach of express warranty claim, the motion states, A[w]ithout
waiving [Dr. Pate=s] objection
to Plaintiff=s attempt
to recast her negligence claim as a breach of contract claim, Plaintiff has no
evidence of any element of the claim (sale, representation, basis of the
bargain, breach, notices, or injury) and in particular, no signed writing
setting out the alleged basis of the bargain between the parties.@








We conclude that
Dr. Pate=s no‑evidence
challenge to Ms. Mills=
remaining claims was sufficiently specific. 
The purpose of the specificity requirement is to provide the nonmovant
with fair notice of the matters on which it must produce some evidence.  Community Initiatives, Inc.  v. Chase Bank of Texas, 153 S.W.3d 270,
279 (Tex.App.--El Paso 2004, no pet.). 
While Dr. Pate=s
motion could have been more specific in addressing the challenged elements of
the claims, the specificity required under Rule 166a(i) deals with evidentiary
support for an element of a claim, not the evidentiary components that may
prove an element of the cause of action. 
See id.; Dominguez v. Payne, 112 S.W.3d 866, 868
(Tex.App.--Corpus Christi 2003, no pet.); Baker v. Gregg County, 33
S.W.3d 72, 76 (Tex.App.--Texarkana 2000, no pet.); In re Mohawk Rubber Co.,
982 S.W.2d 494, 497-98 (Tex.App.--Texarkana 1998, orig. proceeding).  AMoreover,
nothing in rule 166a(i) or its comment forbids a defendant from challenging
every element of the plaintiff=s
claims, as long as each element is distinctly and explicitly challenged.@ Community Initiatives, Inc.,
153 S.W.3d at 280.  Contrary to Ms. Mills= assertions, this case is easily
distinguishable from In re Estate of Swanson, 130 S.W.3d 144
(Tex.App.--El Paso 2003, no pet.).  In Estate
of Swanson, this Court determined that the no-evidence motion in that case
contained only global and conclusory statements that there was no evidence of
certain facts alleged in the plaintiff=s
petition and thus, failed to met the specificity requirements under Rule
166a(i).  Id. at 147.  Here, Dr. Pate=s
no-evidence motion was sufficiently specific in that it clearly listed the
plaintiff=s claims
and identified the elements that were lacking in each claim.  Issue Two is overruled.

Review
of No-Evidence Partial Summary Judgment

In Issue Three,
Ms. Mills contends the trial court erred in granting Dr. Pate=s no-evidence motion for summary
judgment because the summary judgment evidence raised genuine issues of
material fact as to all the challenged elements of her causes of action for
failure to obtain informed consent and breach of warranty.[3]

Informed
Consent

In her petition,
Ms. Mills alleged that Dr. Pate had failed to adequately disclose information
to her as to the second liposuction and if he had disclosed the risks and
hazards inherent in the procedure, she would have refused such treatment.  In the no-evidence motion, Dr. Pate asserted
that Ms. Mills lacked evidence as to every element of informed consent to the
January 2001 procedure, specifically he alleged she had no evidence of duty,
breach, causation, or harm relating to the touch-up liposuction and thigh lift.








Under former Tex.Rev.Civ.Stat. art. 4590i, section
6.02, for health care liability claims based on the failure of the physician to
disclose or adequately to disclose the risks and hazards involved in the
medical care or surgical procedure rendered by the physician, recovery may be
obtained only under the theory of Anegligence
in failing to disclose the risks or hazards that could have influenced a
reasonable person in making a decision to give or withhold consent.@ 
See former Tex.Rev.Civ.Stat.
art. 4590i, ' 6.02[4];
see also Hartfiel v. Owen, 618 S.W.2d 902, 905 (Tex.Civ.App.--El Paso
1981, writ ref=d
n.r.e.)(a plaintiff may not recover for negligence under theory of informed
consent unless he proves both that he would not have consented to treatment had
he been informed of the undisclosed risk and that he was injured by the
occurrence of the risk of which he was not informed).

Prior to the
second surgery, Ms. Mills signed a consent form which specifically disclosed
the following risks:  Adissatisfaction with cosmetic results .
. . possible need of future revision to obtain improved results, poor wound
healing, recurrence of the original condition, and uneven contour.@ 
Ms. Mills complains that by the time Dr. Pate included this warning in
the consent document for the second surgery, she was already suffering these
conditions.  While we understand Ms.
Mills= dilemma,
it remains undisputed that Dr. Pate did disclose the risks and hazards inherent
in the touch-up liposuction procedure, which she complained had not been
disclosed to her in the first procedure. 
Further, even if Dr. Pate promised Ms. Mills that the second liposuction
operation would fix all of the irregularities, this fact does not create a
genuine issue of material fact as to whether or not Dr. Pate adequately
disclosed the risks and hazards inherent in the second surgery.  Therefore, we conclude the trial court
correctly found there was no evidence that Dr. Pate failed to obtain Ms. Mills= informed consent to the second
surgery.  

 








Breach
of Express Warranty

Within her third
issue, Ms. Mills also contends that the trial court erred in granting summary
judgment as to her common law claim for breach of express warranty.  In Dr. Pate=s
no-evidence motion, he asserted that Ms. Mills=
breach of warranty claim was merely an attempt to recast her negligence claims
as a breach of contract claim and, in addition, she had no evidence to support
the elements of her claim.

A cause of action
against a health care provider is a health care liability claim under the Act
if it is based on a claimed departure from an accepted standard of medical
care, health care, or safety of the patient, whether the action sounds in
contract or tort.  See former Tex.Rev.Civ.Stat. art. 4590i, ' 1.03(a)(4); Diversicare General
Partner, Inc. v. Rubio, 185  S.W.3d
842, 847 (Tex. 2005); MacGregor Med. Ass=n
v. Campbell, 985 S.W.2d 38, 41 (Tex. 1998)(per curiam); Gormley v.
Stover, 907 S.W.2d 448, 449 (Tex. 1995)(per curiam); Sorokolit v. Rhodes,
889 S.W.2d 239, 242 (Tex. 1994).  A cause
of action alleges a departure from accepted standards of medical care or health
care if the act or omission complained of is an inseparable part of the
rendition of medical services.  Rubio,
185 S.W.3d at 847.  It is well settled
that a health care liability claim cannot be recast as another cause of action
to avoid the requirements of the Act.  Id.
at 851; MacGregor Med. Ass=n,
985 S.W.2d at 38.  To determine whether a
plaintiff has tried to do so, we must examine the underlying nature of the
claim and are not bound by the form of the pleading.  Rubio, 185 S.W.3d at 847; MacGregor
Med. Ass=n,
985 S.W.2d at 40; Sorokolit, 889 S.W.2d at 242.  If the claim is based on the physician=s breach of the accepted standard of
medical care, the cause of action is nothing more than an attempt to recast the
malpractice claim.  See Gormley,
907 S.W.2d at 450.








In this case, Ms.
Mills amended her original petition to include a breach of express warranty
claim.  In her claim, she alleged that
Dr. Pate made the following representations to her about the quality or
characteristics of his services:  (1) she
was a suitable candidate for surgery; and (2) after liposuction surgery, she would
look beautiful and that she would have smooth skin without ripples, bulges, or
bags.  She also alleged that Dr. Pate
breached the warranty, as expressed in his representations because the services
he provided did not conform to the character and quality of the services
described, and subsequently, she was left with irregularities to her skin and
body after Dr. Pate completed the two liposuction surgeries.

Relying on Sorokolit,
Ms. Mills contends that where a physician promises particular surgical results,
he may be held liable for breach of that express warranty.  In Sorokolit, the physician guaranteed
that following breast surgery, the plaintiff=s
breast would look just like the breasts in a photograph she selected prior to
surgery.  Sorokolit, 889 S.W.2d at
240.  The Sorokolit Court
concluded that the plaintiff=s
express warranty claim was not precluded under the Act where a physician
guaranteed a particular result and the claim did not require Aa determination of whether a physician
failed to meet the standard of medical care . . . .@  Id. at 242-43.








Here, Ms. Mills
presented more than a scintilla of probative evidence to support her common law
claim for breach of an express warranty. 
The evidence from Ms. Mills=
deposition testimony concerning Dr. Pate=s
remarks, the promised results, and injuries she suffered raises genuine issues
of material fact as to each challenged element of Ms. Mills= breach of express warranty claim with
respect to the first surgery, for which she paid Dr. Pate to perform.  While Dr. Pate=s
representations about the quality or characteristics of the services he sold to
Ms. Mills were, of course, related to their patient-client relationship, these
representations are not inseparable from her negligence claims against him and
consequently, they do not require a determination as to whether Dr. Pate failed
to meet the accepted standard of medical care for cosmetic surgery.  Thus, despite Dr. Pate=s
assertions, Ms. Mills=
breach of warranty claim is not an improper attempt to recast her informed
consent claim to avoid requirements of the Act.   Rather, there is some evidence that Dr. Pate=s particular representations were
actionable as an express warranty claim in that his representations did not
conform to the character and quality of the services promised, they formed the
basis of the parties=
bargain for the first surgery, and injury resulted to Ms. Mills.  See Southwestern Bell Tel. Co. v. FDP
Corp., 811 S.W.2d 572, 576-77 & n.3 (Tex. 1991)(noting elements of a
breach of warranty claim).








In the no-evidence
motion, relying on the statute of frauds, Dr. Pate asserted that a signed writing
of the alleged representations was an element of Ms. Mills= breach of express warranty claim.  We disagree with this contention.  While the statute of frauds does require that
an agreement, promise, contract, or warranty of cure relating to medical care
or results thereof made by a physician or health care provider under the Act,
must be in writing and signed by the person to be charged with the promise or
agreement or by someone lawfully authorized to sign for him, this requirement
is not the Afunctional
equivalent@ of an
element to Ms. Mills=
claim, but rather the lack of such a writing is an affirmative defense, which
Dr. Pate has the burden to plead and prove. 
See Tex.Bus.&Com.Code
Ann. ' 26.01(a)
& (b)(8)(Vernon 2005).  A trial court
may not grant a Ano-evidence@ motion for summary judgment on an
affirmative defense, therefore, such grounds would have been improper in this
case.[5]  See Battin v. Samaniego, 23 S.W.3d
183, 185-86 (Tex.App.--El Paso 2000, pet. denied).

After reviewing
the evidence under the appropriate standard, we conclude that the trial court
correctly granted a no-evidence summary judgment on Ms. Mills= informed consent claims, but erred in
granting a no-evidence summary judgment as to Ms. Mills=
breach of express warranty claim for the first surgery because Ms. Mills
presented some probative evidence to support the elements of her claim and
because Dr. Pate=s
affirmative defense under the statute of frauds would have been an improper
basis for granting the no-evidence summary judgment.  Therefore, we sustain Ms. Mills= Issue Three only as to the erroneous
granting of the no-evidence summary judgment on her breach of express warranty
claim for the first surgery.

For the reasons
stated above, we affirm the trial court=s
judgment in part, reverse in part, and remand the cause to the trial court for
further proceedings.

 

 

June
1, 2006

DAVID WELLINGTON
CHEW, Justice

 

Before Barajas, C.J., McClure, and Chew, JJ.











[1]
In his deposition, Dr. Pate admitted that Ms. Mills had irregularities
following the first surgery, however, he stated that they were what one would
expect, rather than abnormalities. 
Dr. Pate did not charge Ms. Mills for the touch-up liposuction
procedure.  Dr. Pate agreed that he did
the touch-up surgery because the first surgery left Ms. Mills with the complained-of
irregularities.  Dr. Pate admitted that
Ms. Mills=
pre-operative photographs by Dr. Gilliland showed a small irregularity in the
left hip.





[2]
In 2003, the Legislature repealed the Act, effective September 1, 2003, and
replaced it with Chapter 74 of the Civil Practices and Remedies Code.  See Acts of 1977, 65th Leg., R.S., ch.
817, 1977 Tex.Gen.Laws 2039, 2039‑2053,
amended by Acts of 1993, 73rd Leg., R.S., ch. 625, '
3, 1993 Tex.Gen.Laws 2347, 2347‑49,
amended by Acts of 1995, 74th Leg., R.S., ch. 140, '
1, 1995 Tex.Gen.Laws 985, 985‑989
(former Tex.Rev.Civ.Stat. art.
4590i, ' 1.01‑16.02,
the AMedical
Liability and Insurance Improvement Act@)(henceforth
Aformer Tex.Rev.Civ.Stat. art. 4590i@),
repealed by Acts of 2003, 78th Leg., R.S., ch. 204, '
10.09, 2003 Tex.Gen.Laws 847, 884
(current version at Tex.Civ.Prac.&Rem.Code
Ann. ' 74.001 et
seq. (Vernon 2005)(eff. Sept.1, 2003)).





[3]
Ms. Mills does not challenge the trial court=s
granting of summary judgment on her post-operative negligence claims.





[4]
Acts of 1977, 65th Leg., R.S., ch. 817, '
6.02, 1977 Tex.Gen.Laws 2039,
2048 (repealed 2003), now codified at Tex.Civ.Prac.&Rem.Code
Ann. ' 74.101
(Vernon 2005).





[5]
Dr. Pate notes in his appellate brief that the trial court would have
eventually had to dismiss Ms. Mills=
breach of express warranty claim for lack of a signed writing, pointing out
that his summary judgment motion was granted before he was able to argue his
special exceptions and objections to the claim. 
We, however, reserve judgment as to the eventual outcome of Ms. Mills= express warranty claim in any
subsequent trial court proceedings.