

# NUMBER 13-07-310-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**BRYAN T. HAYE,**                                       **Appellant,**

**v.**

**ELTON PORTER MARINE
INSURANCE,**                                     **Appellee.**

## On appeal from the 55th District Court of Harris County, Texas.

# MEMORANDUM OPINION

**Before Justices Yañez, Benavides, and Vela
Memorandum Opinion by Justice Yañez**

By two sub-issues, appellant, Bryan T. Haye, appeals the granting of summary judgment in favor of appellee, Elton Porter Marine Insurance ("Elton Porter"). Appellant contends the trial court erred in granting summary judgment because: (1) there are material fact issues as to each of his claims; and (2) Elton Porter did not seek summary

judgment on his claim for promissory estoppel. By a cross-issue, Elton Porter contends the trial court erred in overruling its objections to and motion to strike appellant's summary judgment evidence. We overrule Elton Porter's cross-issue, reverse the summary judgment as to each of appellant's claims, and remand to the trial court.

## I. Background

On May 5, 2005, a boat owned by appellant was badly damaged in an accident. Although appellant believed the boat to be fully insured at the time of the accident, the policy covering the boat expired on February 7, 2005, almost three months prior to the accident. Appellant sued Elton Porter, his insurance agency, alleging that it negligently "fail[ed] to procure or renew insurance" on the boat.[1]

On September 29, 2006, Elton Porter filed a combined traditional and no-evidence "Motion for Final Summary Judgment."[2] In the "traditional" section of its motion, Elton Porter argues, among other things, that appellant's negligence claim fails because even if Elton Porter had a duty to notify appellant of the pending expiration of the policy, it satisfied any such duty by providing notice. Elton Porter also argues that appellant's negligence claim fails because no act or omission by Elton Porter proximately caused appellant's damages; rather, appellant's damages were proximately caused by the accident and appellant's own failure to pay the insurance premium.

With respect to appellant's Insurance Code claim, Elton Porter argued, as a

---

[1] In his Second Amended Petition, filed on August 1, 2006, appellant alleged causes of action for negligence, promissory estoppel, violations of the DTPA and Insurance Code, and breach of Elton Porter's duty to "notify the lender of the non[-]renewal of the policy."

[2] *See* TEX. R. CIV. P. 166a(c), (i). We note that appellant requested the appellate record to include Elton Porter's "Motion for Final Summary Judgment" dated "7-26-06;" however, the only "Motion for Final Summary Judgment" in the record before us is file-stamped September 29, 2006.

2

traditional ground, that the claim fails because appellant's claimed damages are the benefits under the policy, and his failure to receive benefits was proximately caused by his own acts and omissions. As to appellant's DTPA claim, Elton Porter urged, as a traditional ground, that the claim fails because even if it failed to notify appellant of the delinquency (which it denies), any such failure is a breach-of-contract claim, and is not actionable under the DTPA. In support of its traditional motion, Elton Porter attached various documents, including documentation that the policy's expiration date was February 7, 2005, the January 12, 2005 renewal notice sent to appellant, along with an invoice for the premium, and a February 26, 2005 letter to appellant stating that no renewal premium had been received. Elton Porter also attached excerpts from several depositions, including appellant's deposition, and appellant's responses to requests for disclosure.

In the "no-evidence" section of its motion, Elton Porter urged that there is no evidence that the insurance premium was paid. As to appellant's negligence claim, Elton Porter argued that there is no evidence that it had a duty to keep appellant reasonably informed, and no evidence that it breached any such duty. With regard to appellant's DTPA claim, Elton Porter argued there is no evidence that appellant is a "consumer" under the DTPA because he did not pay the premium or purchase any insurance policy to keep the boat insured.[3]

On August 10, 2006, appellant filed a response to Elton Porter's combined motion. In his response, appellant asserted that Elton Porter had a "three-step policy renewal

---

[3] We note that Elton Porter also urged "no-evidence" arguments with regard to appellant's contract and bad faith claims, but appellant asserts that those arguments are "irrelevant" because he did not plead any contract or bad faith claims.

3

process," which included: (1) notifying the insured of the impending expiration of a policy; (2) notifying the insured when a policy terminates or lapses; and (3) following up with a phone call to the insured to make certain the insured knows that no coverage exists. Appellant contends that based on his past business relationship with Elton Porter, he relied on the company to annually obtain insurance on his boats. He also contends that Elton Porter did not notify him in writing of the expiration of the policy, and did not provide a follow-up phone call to ensure that he knew of the lapse in the policy. Appellant contends that "the producing (and sole) cause of [his] damages was Elton Porter's negligence in failing to follow its own internal policies regarding insurance renewals." In support of his response, appellant attached the following evidence: (1) his own affidavit; (2) the affidavit of Jennifer Kubeczka, an employee who works for appellant; (3) an excerpt from the deposition of Ken Collier, then vice-president of Elton Porter; (4) an excerpt from the deposition of Shelly Waller, then office manager for Elton Porter; (5) an excerpt from the deposition of James Cobb, then a sales associate with Elton Porter; and (6) an excerpt from the deposition of Dennis Onstott, then a sales associate with Elton Porter.

On September 29, 2006, the trial court granted the summary judgment without stating the grounds for its ruling. In the same order, the trial court ordered that "all objections to summary judgment evidence are denied."

## II. Jurisdiction

By his second sub-issue, appellant contends that Elton Porter did not seek summary judgment on his claim for promissory estoppel. Thus, we must first determine whether the trial court's judgment is a final judgment.

### A. Standard of Review and Applicable Law

4

Appellate courts are obligated to review *sua sponte* issues affecting jurisdiction.[4] We examine the entire record to determine whether an order disposes of all pending claims and parties.[5]

A judgment is not final unless it disposes of all pending parties and claims in the record.[6] There can be no presumption that a motion for summary judgment addresses all of the movant's claims.[7] In cases in which only one final and appealable judgment can be rendered, a judgment issued without a conventional trial is final for purposes of appeal if and only if it either states with unmistakable clarity that it is a final judgment or actually disposes of all claims and parties then before the court, regardless of its language.[8] The law does not require that a final judgment be in any particular form.[9] Therefore, whether a summary-judgment order is a final judgment must be determined from its language and the record in the case.[10]

The Texas Supreme Court has stated that "language that the plaintiff take nothing by his claims in the case . . . shows finality if there are no other claims by other parties."[11]

---

[4] *M. O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004).

[5] *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205-06 (Tex. 2001)

[6] *Cartwright v. Cologne Prod. Co.*, 182 S.W.3d 438, 443 (Tex. App.–Corpus Christi 2006, pet. denied) (citing *Guajardo v. Conwell*, 46 S.W.3d 862, 863-64 (Tex. 2001) (per curiam); *Garcia v. Comm'rs Court*, 101 S.W.3d 778, 784 (Tex. App.–Corpus Christi 2003, no pet.)).

[7] *Id.* (citing *McNally v. Guevara*, 52 S.W.3d 195, 196 (Tex. 2001) (per curiam)).

[8] *Id.* (citing *Lehmann*, 39 S.W.3d at 204; *Garcia*, 101 S.W.3d at 784).

[9] *Id.* (citing *Lehmann*, 39 S.W.3d at 195; *Garcia*, 101 S.W.3d at 784).

[10] *Id.* (citing *Lehmann*, 39 S.W.3d at 195; *Garcia*, 101 S.W.3d at 784).

[11] *Jacobs v. Satterwhite*, 65 S.W.3d 653, 655 (Tex. 2001) (quoting *Lehmann*, 39 S.W.3d at 205).

5

"In addition, 'if a defendant moves for summary judgment on only one of [multiple] claims asserted by the plaintiff, but the trial court renders judgment that the plaintiff take nothing on all claims asserted, the judgment is final—erroneous, but final.'"[12]

## B. Discussion

Here, the judgment (1) is entitled "Final Judgment," (2) states that it "finally disposes of all parties and all claims and is appealable, (3) states that it "is a final judgment," (4) states that appellant "shall take nothing on any of its [sic] claims against Defendant, Elton Porter," and (5) states that "all relief not expressly granted herein is denied."

In response to the argument that Elton Porter failed to seek summary judgment on appellant's promissory estoppel claim, Elton Porter first argues that when it filed its motion for summary judgment, no promissory estoppel claim had been pleaded. As noted above, however, appellant's second amended petition, which included the promissory estoppel claim, was filed on August 1, 2006; Elton Porter's "Motion for Final Summary Judgment" (which does not address the promissory estoppel claim) is file-stamped September 29, 2006.

Second, Elton Porter argues that it addressed the promissory estoppel claim in its reply in support of its motion for summary judgment. Elton Porter points to the following passage from its reply:

> [4] Haye alleges further that Elton Porter made certain promises to him which resulted in his own failure to pay his insurance premium when due. However, because Haye had no communication with Elton Porter, there is no "promise" upon which he could have reasonably relied. Further, any reliance on any such fictitious "promise" would have been unreasonable in light of the written notices sent and received.

---

[12] *Id.* (quoting *Lehmann*, 39 S.W.3d at 200).

Based on this passage, Elton Porter argues that it "clearly set forth two elements upon which there is no evidence: (1) no promise; and, (2) no reasonable reliance." We disagree.

Initially, we note that the certificate of service on Elton Porter's reply is dated August 16, 2006, but the reply is file-stamped August 16, *2007*. Even if we assume, however, that the trial court considered Elton Porter's reply, its argument fails because a movant may not use a reply brief to meet the specificity requirement of rule 166a(i) or to assert new grounds for summary judgment.[13] Therefore, we do not consider any arguments raised in Elton Porter's reply. We conclude that Elton Porter did not seek summary judgment on appellant's promissory estoppel claim.

We hold that the trial court's judgment was a final judgment encompassing appellant's promissory estoppel claim, but because the promissory estoppel claim was not addressed in Elton Porter's motion, summary judgment on that claim was erroneous.[14]

We sustain appellant's second sub-issue, reverse the summary judgment on appellant's promissory estoppel claim, and remand that claim to the trial court.

### III. Summary Judgment

### A. Standards of Review

Elton Porter filed a combined traditional and no-evidence motion for summary judgment. The standard of review for the grant of a motion for summary judgment is

---

[13] *Community Initiatives, Inc. v. Chase Bank of Texas*, 153 S.W.3d 270, 280 (Tex. App.–El Paso 2004, no pet.); *see* TEX. R. CIV. P. 166a(i) (stating that a no-evidence motion for summary judgment "must state the elements as to which there is no evidence").

[14] *See Satterwhite*, 65 S.W.3d at 655.

determined by whether the motion was brought on no-evidence or traditional grounds.[15]

A no-evidence summary judgment is equivalent to a pretrial directed verdict, and this Court applies the same legal sufficiency standard on review.[16] In an appeal of a no-evidence summary judgment, this Court reviews the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences.[17] If the non-movant produces evidence to raise a genuine issue of material fact, summary judgment is improper.[18]

All that is required of the non-movant is to produce a scintilla of probative evidence to raise a genuine issue of material fact.[19] "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion of a fact.'"[20] Conversely, more than a scintilla exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions."[21] In determining whether the non-movant has produced more than a scintilla of evidence, we review the evidence in the light most favorable to the non-movant, crediting such evidence

---

[15] *See* TEX. R. CIV. P. 166a(c), (i); *see also Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 771 (Tex. App.–Corpus Christi 2003, no pet.) (op. on reh'g).

[16] *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Ortega*, 97 S.W.3d at 772.

[17] *City of Keller v. Wilson*, 168 S.W.3d 802, 825 (Tex. 2005) (noting that review of a "no-evidence" motion for summary judgment is effectively restricted to the evidence contrary to the motion); *Ortega*, 97 S.W.3d at 772.

[18] TEX. R. CIV. P. 166a(i).

[19] *Ortega*, 97 S.W.3d at 772.

[20] *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

[21] *Id.* (citing *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 25 (Tex. 1994)).

8

if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not.[22] The burden of producing evidence is entirely on the non-movant; the movant has no burden to attach any evidence to the motion.[23] We may not consider any evidence presented by the movant unless it creates a fact question.[24]

We review the trial court's granting of a traditional motion for summary judgment *de novo*.[25] When reviewing a traditional summary judgment, we must determine whether the movant met its burden to establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[26] The movant bears the burden of proof in a traditional motion for summary judgment, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.[27] We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor.[28]

We will affirm a traditional summary judgment only if the record establishes that the movant has conclusively proved its defense as a matter of law or if the movant has

---

[22] *Tamez*, 206 S.W.3d at 582; *City of Keller*, 168 S.W.3d at 827.

[23] TEX. R. CIV. P. 166a(i).

[24] *Binur v. Jacobo*, 135 S.W.3d 646, 651 (Tex. 2004); *Newkumet v. Allen*, 230 S.W.3d 518, 521 (Tex. App.–Eastland 2007, no pet.).

[25] *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Branton v. Wood*, 100 S.W.3d 645, 646 (Tex. App.–Corpus Christi 2003, no pet.).

[26] TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

[27] *See Sw. Elec. Power Co.*, 73 S.W.3d at 215.

[28] *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

9

negated at least one essential element of the plaintiff's cause of action.[29] A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence.[30] Only when the movant has produced sufficient evidence to establish its right to summary judgment does the burden shift to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant.[31] A defendant seeking summary judgment on an affirmative defense must conclusively prove all the elements of the affirmative defense.[32] To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law.[33]

When a party moves for summary judgment under both rules 166a(c) and 166a(i) of the Texas Rules of Civil Procedure, we will first review the trial court's judgment under the standards of rule 166a(i).[34] If the appellant fails to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether appellee's summary judgment proof satisfies the less stringent rule 166a(c) burden.[35]

---

[29] *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004); *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997); *Clear Creek Basin*, 589 S.W.2d at 678.

[30] *City of Keller*, 168 S.W.3d at 816.

[31] *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *see Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

[32] *Steel*, 997 S.W.2d at 223; *see* TEX. R. CIV. P. 166a(b), (c).

[33] *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996).

[34] *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

[35] *Id.*

10

The admission or exclusion of summary-judgment evidence rests in the sound discretion of the trial court.[36]  A trial court abuses its discretion if it acts without reference to any guiding rules or principles or acts in an arbitrary or unreasonable manner.[37]  A trial court does not abuse its discretion if it decides a matter within its discretion differently than the appellate court would.[38]  An appellate court must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling.[39]  Moreover, we will not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment.[40]  We review the entire record and require the complaining party to demonstrate that the judgment turns on the particular evidence admitted.[41]

## B.   Discussion

### 1.  Negligence Claim

#### a.  No-Evidence Motion

In the no-evidence section of its motion, Elton Porter argued that there is no evidence that it (1) had any duty to keep appellant reasonably informed, nor that it (2) breached any such duty.

To establish negligence, a party must establish a duty, a breach of that duty, and

---

[36] *Alaniz v. Hoyt*, 105 S.W.3d 330, 341 (Tex. App.–Corpus Christi 2003, no pet.).

[37] *Id.*

[38] *Id.*

[39] *See Owens-Corning Fiberglass Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

[40] *Id.*; *see also* TEX. R. APP. P. 44.1(a)(1).

[41] *Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007).

11

damages proximately caused by the breach.[42]  Whether a duty exists is a threshold inquiry and a question of law; liability cannot be imposed if no duty exists.[43]

In his response, appellant states:

> Clearly, the affidavits of [appellant] and Jennifer Kubeczka combined with the deposition testimony of Elton Porter's agents, Waller, Collier, Cobb and Onstott (attached hereto and incorporated herein as Exhibits "A" through "F") establish a duty based upon both a course of dealing between the parties and Elton Porter's own internal office policy regarding renewal of existing insurance policies.  The only question, therefore, is whether that duty was breached in this case.

In the following section of his response, entitled "Breach of duty, causation and damages," appellant argued:

> Elton Porter failed to follow its own policies and procedures when it failed to notify [appellant] in writing or otherwise that the policy lapsed; when it failed to provide a follow-up telephone call; and when it wrongfully informed [appellant's] agent that the policy was in effect until the end of November, 2005, a date more than six months after the accident date of May 1, 2005 (See Plaintiff's Exhibits "A" through "F").  These acts constituted a breach of that duty and negligence.  As a direct and proximate result of that breach, [appellant] was "uninsured" and when his boat was totaled on May 1, 2005 and suffered damages of $287,000.00.

In his appellate brief, appellant refers to the testimony of Elton Porter employees Ken Collier, Shelly Waller, and James Cobb to establish that (1) Elton Porter had a three-step policy renewal process and (2) Cobb did not call appellant to advise him that the policy had lapsed.  Appellant asserts generally that "[t]he summary judgment evidence outlined in sections (b) and (c) of this brief established that a duty existed based upon an established course of dealing between the parties, as well as upon Elton Porter's own

---

[42] *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006).

[43] *Id.* (citing *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998)).

12

internal office policy." The only summary judgment evidence referenced in appellant's brief addressing whether there was an established course of dealing between the parties is appellant's own affidavit, in which he states, in pertinent part, that:

> I never received Defendant's Exhibit "9", a letter dated February 26, 2005 from James Cobb.[44] I never received notice, in writing or orally, that my insurance on the vessel had actually lapsed or expired. I have been doing business with Elton Porter for 8 years and I have never allowed any other insurance coverage on a boat that I owned to lapse and not renew. I have always relied on Elton Porter to advise me about the status of my insurance coverage on this vessel and my other watercraft and to secure proper insurance coverage prior to the expiration of an existing policy. Over the eight[-]year relationship I had with Elton Porter, I always received written notice and follow-up calls when one of my vessels was up for insurance renewal. These notices were either received by me or by my designated agent.

> At the time of the accident in this case (May 1, 2005), it was my understanding that the subject vessel was fully insured. This was based upon my past course of dealing with Elton Porter and my agent Jennifer Kubeczka informing me of the facts set out in her affidavit, attached hereto, which I have reviewed.

Appellant also cites *Trinity Universal Ins. Co. v. Burnette*,[45] and *Horn v. Hedgecoke Ins. Agency*[46] to support his contention that Elton Porter owed him a duty based on (1) his established course of dealing with Elton Porter and (2) its own internal policies. Elton Porter concedes that it had a duty to keep appellant reasonably informed,[47] but argues that

---

[44] Defendant's Exhibit 9 is a letter to appellant, dated February 26, 2005, from James Cobb, Elton Porter's account representative, stating that the policy was due to renew on 2-7-2005, that no payment had been received, and that "[i]t may not be too late to still renew this policy."

[45] *Trinity Universal Ins. Co. v. Burnette*, 560 S.W.2d 440, 442 (Tex. App.–Beaumont 1977, no writ).

[46] *Horn v. Hedgecoke Ins. Agency*, 836 S.W.2d 296, 299 (Tex. App.–Amarillo 1992, writ denied).

[47] *See* APPELLEE'S BRIEF, p. 11 ("It is settled law that an insurance agent like Elton Porter has a duty to keep its clients reasonably informed about the status of any coverage." (citing *Kitching v. Zamora*, 695 S.W.2d 553 (Tex. 1985)).

it "discharged that duty" by notifying appellant in writing before the policy expired and again after the policy expired. Although appellant does not specifically identify the "duty" that Elton Porter owed him, we construe his argument to be that Elton Porter had a duty to keep him reasonably informed, and that it breached that duty by (1) failing to notify him in writing or otherwise that the policy had lapsed, (2) failing to provide a follow-up telephone call, and (3) wrongfully informing Kubeczka that the policy was in effect until November 2005.

### i. Elton Porter's Cross-Issue: Kubeczka's Affidavit

Because appellant relies, in part, on Kubeczka's affidavit, as summary judgment evidence, we address Elton Porter's challenge to statements in her affidavit.[48] Specifically, Elton Porter argues that certain statements in Kubeczka's affidavit that were attributable to Sea Horse[49] should have been stricken on hearsay grounds. It also argues that Kubeczka's statements regarding any purported agency relationship between Elton Porter and Sea Horse are conclusory and inadmissible. Kubeczka's affidavit stated, in pertinent part:

> In late February, 2005, at the request of Bryan Haye, I contacted Elton Porter regarding the status of the insurance covering the 1997 Sea Ray 440

---

[48] We note that in the "Issues Presented" section of its brief, Elton Porter frames its cross-issue as "Did the trial court err in overruling Elton Porter's Objections to and Motion to Strike Haye's Summary Judgment Evidence?" *See* APPELLEE'S BRIEF, p. 3. The record shows that in its Objections to and Motion to Strike, Elton Porter objected to appellant's affidavit, Kubeczka's affidavit, and to appellant's failure to specifically identify statements within the deposition excerpts he offered as evidence. In the "Cross Issue" section of its brief, however, Elton Porter objects only to certain statements in Kubeczka's affidavit on the basis of hearsay. *See id.*, p. 15. Thus, we address only the arguments raised by Elton Porter in the "Cross Issue" section of its brief.

[49] The record before us is unclear as to the identity of "Sea Horse." As noted, Kubeczka's affidavit refers to "Sea Horse underwriters insurance company," and that a "Sea Horse representative" told her the policy had been renewed through November 2005. Elton Porter asserts that there cannot have been any "renewal" because the policy (before it expired) was "a Royalmaster Preferred Yacht Policy, not a Sea Horse policy." According to Elton Porter, the insurer on the lapsed policy was Royal Insurance Company of America, then part of Royal & SunAlliance.

vessel (hereinafter referred to as the "vessel") that is the subject of this lawsuit. I spoke with a man named James Cobb who told me to contact Sea Horse underwriters insurance company. Cobb said that Elton Porter was the agent for Sea Horse and that Sea Horse provided the insurance for this vessel. I contacted Sea Horse at the number provided by Cobb and was told by one of the Sea Horse representatives that [the] policy on this specific vessel had renewed; payment had been made; and the vessel was fully covered by insurance through the end of November 2005. I relayed this information to Bryan Haye that same day.

In its "Objections to and Motion to Strike Evidence," Elton Porter objected to "the entirety of the Kubekcza [sic] Affidavit because it is not competent summary judgment evidence." In support of its argument, Elton Porter cited Texas Rule of Civil Procedure 166a(f) and *Box v. Bates*.[50] In a parenthetical, it quoted language from *Box* that an "affidavit based on hearsay and statements contained in affidavits that are but mere conclusions of law are insufficient to warrant the overruling of a motion for summary judgment."[51] In its motion, the only statement that Elton Porter specifically objected to on hearsay grounds is "the hearsay in sentence 5 of paragraph 2. Kubeczka testifies that she 'relayed' information to Haye; such being an out-of-court statement offered to prove the truth of the matter asserted." On appeal, Elton Porter challenges only the "statements [in Kubeczka's affidavit] attributable to Sea Horse."

In his reply brief, appellant responds by arguing that (1) Kubeczka's statements regarding Sea Horse are admissible as admissions by a party opponent under rule 801(e)(2),[52] and (2) Cobb's statements to Kubeczka—that Elton Porter was an agent for

---

[50] *Box v. Bates*, 346 S.W.2d 317, 319 (Tex. 1961).

[51] *Id.*

[52] *See* TEX. R. EVID. 801(e)(2).

15

Sea Horse—are admissible as admissions by a party opponent's employee or agent.[53]

There is no evidence, however, that appellant made these arguments to the trial court.

"'Hearsay'" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[54] The proponent of hearsay has the burden of showing that the testimony fits within an exception to the general rule prohibiting the admission of hearsay evidence.[55] An affidavit containing hearsay is objectionable and does not raise a fact issue to defeat a summary judgment motion if a proper objection is made.[56] Inadmissible hearsay admitted without objection is not denied probative value merely because it is hearsay.[57]

To preserve a complaint for appellate review, rule of evidence 103(a)(1) requires "a timely objection . . . stating the specific ground of objection, if the specific ground was not apparent from the context."[58] "Stated another way, a 'timely' and 'specific' objection is

---

[53] *See id.* 801(e)(2)(C).

[54] *Id.* 801(d).

[55] *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 908 n.5 (Tex. 2004).

[56] *See Querner Truck Lines, Inc. v. Alta Verde Indus., Inc.*, 747 S.W.2d 464, 468 (Tex. App.–San Antonio 1988, no writ).

[57] *See* TEX. R. EVID. 802; *Pickens v. Pickens*, 62 S.W.3d 212, 216 n.2 (Tex. App.–Dallas 2001, pet. denied); *Atkinson Gas Co. v. Albrecht*, 878 S.W.2d 236, 242 (Tex. App.–Corpus Christi 1994, writ denied); *Casas v. Gilliam*, 869 S.W.2d 671, 673 (Tex. App.–San Antonio 1994, no writ) (holding statement in affidavit was not denied probative value, even though affidavit, admitted without objection, contained inadmissible hearsay); *Irlbeck v. John Deere Co.* 714 S.W.2d 54, 57-58 (Tex. App.–Amarillo 1986, writ ref'd n.r.e.) (holding affidavit supporting the amount due on a written instrument was sufficient to support an award for that amount even though affidavit, admitted without objection, contained inadmissible hearsay).

[58] *See* TEX. R. EVID. 103(a)(1); *see also* TEX. R. APP. P. 33.1(a)(1)(A) (a timely objection or motion must state the grounds for the objection with sufficient specificity to make the trial court aware of the complaint, unless grounds are apparent from the context).

required."[59]   "A general objection to evidence as a whole, whether it be oral or documentary, which does not point out specifically the portion objected to, is properly overruled if any part of it is admissible."[60]  If a specific objection is made, the trial court has a duty to strike that portion of testimony that is inadmissible, where other parts of it are admissible.[61]  Absent such a specific objection, the complaining party waives any argument to the improper admission of the evidence.[62]

Here, Elton Porter objected "to the entirety of the Kubekcza [sic] Affidavit because it is not competent summary judgment evidence."  Although the parenthetical to the cited case suggests that the affidavit is incompetent evidence because it may contain hearsay and/or conclusory statements, the objection does not specify which basis is the ground for the objection.  Moreover, the affidavit contained statements that were clearly admissible (e.g., "I contacted Elton Porter . . . .").  We conclude that Elton Porter waived any argument as to the Kubeczka affidavit by failing to specifically identify objectionable statements within the affidavit.[63]  With respect to the one statement specifically identified—that Kubeczka relayed "this information" to appellant—appellant's own affidavit (which was not objected

---

[59] *In re M.P.*, 220 S.W.3d 99, 101 (Tex. App.–Waco 2007, pet. denied) (citing *Kerr-McGee Corp. v. Helton*, 133 S.W.3d 245, 251 (Tex. 2004); *Residential Dynamics, LLC v. Loveless*, 186 S.W.3d 192, 195 (Tex. App.–Fort Worth 2006, no pet.)) .

[60] *Id.* (quoting *Brown & Root, Inc. v. Haddad*, 180 S.W.2d 339, 341 (1944)); *see also Speier v. Webster College*, 616 S.W.2d 617, 619 (Tex. 1981); *McCormick v. Ramirez*, No. 13-99-00804-CV, 2001 Tex. App. LEXIS 4702, at *9 (Tex. App.–Corpus Christi 2001, pet. denied) (mem. op., not designated for publication) (a general objection to evidence as a whole is properly overruled if any portion of the evidence is admissible).

[61] *Speier*, 616 S.W.2d at 619.

[62] *Id.*

[63] *See id.*

17

to) stated the same information: that "Kubeczka inform[ed him] of the facts set out in her affidavit."[64] We conclude the trial court did not abuse its discretion in admitting Kubeczka's affidavit.[65] We overrule Elton Porter's cross-issue.

### ii. Appellant's Other Evidence

Appellant's summary judgment evidence also included excerpts from the deposition testimony of Ken Collier, who testified that Elton Porter's renewal procedures on an agency bill policy[66] included sending a renewal notice (in the form of a letter to the insured) approximately twenty to thirty days prior to the renewal date, along with an invoice for the renewal premium. Collier also testified that the renewal procedure also included a follow-up telephone call from the agent (in this case, Dennis Onstott) and the customer service representative (here, James Cobb).

Shelly Waller's deposition testimony established that Elton Porter's renewal procedures included sending the insured a renewal offer, and if the insured failed to respond, a "close out letter" advising that the policy had expired.

James Cobb testified that he sent a renewal letter to appellant, and when the policy was not renewed, he documented the file. He testified he did not call appellant to tell him that the policy had expired, and that he did not typically make such calls.

In his deposition testimony, Dennis Ostott was asked about a "letter," which he

---

[64] *See State Office of Risk Mgmt. v. Allen*, 247 S.W.3d 797, 799 (Tex. App.–Dallas 2008, no pet.) (holding an error in admission of evidence is deemed harmless if the objecting party permits the same or similar evidence to be introduced without objection).

[65] *See Hoyt*, 105 S.W.3d at 341.

[66] Collier testified that "this case" involved an "agency bill policy."

identified as "a notice that looks like we [Elton Porter] didn't receive the renewal payment by the renewal date."[67]  Ostott also testified that he spoke to "Frank," an associate of appellant's,[68] after the renewal notice was received.  According to Ostott, Frank complained that the premium was more expensive, and stated that they were going to "shop and see if they could get a better price."

We conclude that appellant presented sufficient evidence to raise a genuine issue of material fact as to (1) whether Elton Porter owed him a duty to keep him reasonably informed and (2) whether it breached that duty.  Accordingly, summary judgment was improperly granted on the grounds asserted in Elton Porter's no-evidence motion as to appellant's negligence claim.

### b.  Traditional Motion for Summary Judgment

We turn next to the arguments and evidence Elton Porter presented in its traditional motion for summary judgment regarding appellant's negligence claim.  We must determine whether Elton Porter conclusively established its right to judgment as a matter of law by negating at least one essential element of appellant's negligence cause of action.[69]

Elton Porter argues that even if it owed appellant a duty to provide notice of the

---

[67] Although we assume the letter referenced above is the February 26, 2005 letter to appellant from James Cobb, it is not specifically identified in the excerpt of deposition testimony contained in the record.

[68] "Frank" was identified in appellant's deposition testimony as Frank Dominguez, chief operations officer of appellant's company.

[69] *See IHS Cedars Treatment Ctr.*, 143 S.W.3d at 798; *Goodyear Tire and Rubber Co. v. Mayes*, 236 S.W.3d 754, 755-56 (Tex. 2007) ("An appellate court reviewing a summary judgment must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all the evidence presented.").

expiration of the policy,[70] it fully discharged any such duty by notifying appellant (1) that the policy would expire on February 7, 2005; (2) that a premium was due on or before January 25, 2005 to keep a policy in place; and (3) that coverage had lapsed. As evidence, Elton Porter presented (1) the declaration page of the policy, showing that the policy period was from 2/7/04 to 2/7/05; (2) a renewal notice letter from Elton Porter to appellant, dated January 12, 2005, showing that the renewal date is February 7, 2005 and the renewal premium is $3,559.00;[71] (3) an invoice with a "premium" for payment attached, noting that payment is needed by "01/25/05" to renew coverage; and (4) a letter dated February 26, 2005 to appellant from James Cobb,[72] advising him that the policy was due to renew on February 7, 2005, and that no payment had been received.

Elton Porter also argues appellant's negligence claim fails because his damages were proximately caused by the accident and his own failure to pay the insurance premium, not by any act or omission by Elton Porter.[73]

We conclude that Elton Porter's evidence establishes that appellant's office received the January 12, 2005 renewal notice. With respect to the February 26, 2005 letter from Cobb, notifying appellant that the policy had lapsed, the evidence is conflicting: Cobb testified he sent the letter; appellant denies receiving it. Appellant claims Elton Porter

---

[70] Elton Porter did not challenge the duty element of appellant's negligence claim in its traditional motion.

[71] Appellant's common-law wife, Charlene "Charlie" Palmer, acknowledged that she received the renewal notice.

[72] This letter was previously identified as "Defendant's Exhibit 9."

[73] Appellant does not dispute that the accident occurred and that the insurance premium was not paid.

20

breached its duty to him, in part, by failing to provide written notice that the policy had lapsed and failing to provide a follow-up phone call advising him that the policy had lapsed.

With regard to whether Elton Porter conclusively negated the proximate cause element of appellant's negligence claim, we conclude that a finding of no coverage is not dispositive of appellant's claim. Appellant contends that "the producing (and sole) cause of [his] damages was Elton Porter's negligence in failing to follow its own internal policies regarding insurance renewals."[74]

We conclude that Elton Porter's evidence failed to conclusively establish its right to judgment as a matter of law by negating either the breach or proximate cause elements of appellant's negligence cause of action.[75] Accordingly, we hold the trial court improperly granted summary judgment in Elton Porter's favor on appellant's negligence claim.

## 2. Appellant's DTPA Claim

### a. No-Evidence Motion

The basic elements of a DTPA cause of action are (1) the plaintiff is a consumer; (2) the defendant engaged in false, misleading, or deceptive acts; and (3) the acts were a producing cause of the plaintiff's injuries.[76] In its no-evidence motion, Elton Porter argues there is no evidence that appellant is a "consumer" under the DTPA.

A consumer is an individual who "seeks or acquires by purchase or lease, any

---

[74] *See* APPELLANT'S BRIEF, p.13.

[75] *See IHS Cedars Treatment Ctr.*, 143 S.W.3d at 798; *Goodyear Tire and Rubber Co.*, 236 S.W.3d at 755.

[76] *See* TEX. BUS. & COM. CODE ANN. § 17.46 (Vernon Supp. 2008); *Herrin*, 89 S.W.3d at 310.

goods or services."[77]  Whether or not a plaintiff is a consumer is a question of law, unless there is a dispute concerning factual issues that create consumer status.[78]  Consumer status is established merely by seeking to acquire services, even if the services are not actually acquired.[79]  It is unnecessary for money to change hands to establish consumer status.[80]  It is also unnecessary for there to have been a written agreement or an actual purchase; it is sufficient for the plaintiff to seek to acquire services in good faith.[81]  An insured seeking to acquire the services of future professional insurance coverage is a "consumer" for purposes of the DTPA.[82]

In its no-evidence motion, Elton Porter argues there is no evidence that appellant contacted the company regarding coverage, and therefore, there is no evidence that he "sought" any insurance policy.  However, appellant's affidavit establishes that he believed the boat was insured, based on his course of dealing with Elton Porter and the information he was given by Kubeczka.  We hold that appellant's evidence is sufficient to raise a fact issue as to his consumer status.

In its appellate brief, Elton Porter argues there is no evidence of a DTPA violation because the alleged violation is based on Kubeczka's affidavit, which asserts that Sea

---

[77] TEX. BUS. & COM. CODE ANN. § 17.45(4) (Vernon Supp. 2008).

[78] *Nast v. State Farm Fire & Cas. Co.*, 82 S.W.3d 114, 122 (Tex. App.–San Antonio 2002, no pet.).

[79] *Id.*

[80] *Id.*

[81] *Id.*

[82] *Herrin v. Med. Protective Co.*, 89 S.W.3d 301, 310 (Tex. App.–Texarkana 2002, pet. denied).

22

Horse—not Elton Porter—represented that the policy had renewed. According to Elton Porter, "[t]here is neither evidence nor authority for attributing Sea Horse's statements to Elton Porter." This argument, however, was not made to the trial court, and we therefore do not address it.[83]

### b. Traditional Motion

In its traditional motion, Elton Porter argued that (1) appellant was not a consumer,[84] and (2) his claim was a breach-of-contract claim, which is not actionable under the DTPA. In support of this argument, Elton Porter cites *MacIntire v. Armed Forces Benefit Association*.[85] *MacIntire* stands for the proposition that an insurer who establishes a reasonable basis for denying a claim, even if that basis is shown to be erroneous, enjoys immunity from statutory bad faith under the Texas Insurance Code and the DTPA.[86]

Appellant argues that *MacIntire* is inapplicable because it involved a claim for "bad faith" denial of benefits under an insurance policy that had lapsed for failure to pay the premiums.[87] In his response to Elton Porter's motion, appellant contends he has neither

---

[83] *See* TEX. R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *see Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993) ("[W]e hold that a summary judgment cannot be affirmed on grounds not expressly set out in the motion or response").

[84] In its traditional motion, Elton Porter makes the same argument as to appellant's lack of consumer status as asserted in its no-evidence motion. Elton Porter points to appellant's deposition testimony, which establishes only that he did not have any conversations with Elton Porter regarding renewal of the policy. We find this evidence does not negate appellant's status as a consumer for the same reasons stated in the discussion of the no-evidence motion.

[85] *MacIntire v. Armed Forces Benefit Ass'n*, 27 S.W.3d 85, 92-93 (Tex. App.–San Antonio 2000, no pet.).

[86] *Id.* at 92.

[87] *Id.* at 88.

23

"asserted a claim for breach of contract" nor "filed a 'bad faith' claim."[88]   According to appellant, his claim is based on Elton Porter (1) breaching its duty to follow its own renewal policies and (2) informing him (through his agent, Kubeczka) that the insurance was renewed, when it was not.   Appellant states, "[c]learly[,] the deceptive act of telling [appellant] that he had insurance (when none was in place) caused [his] damages in this case."

A misrepresentation claim is independent of a breach-of-contract claim, and may exist in the absence of coverage.[89]   When an insurance agent is alleged to have misrepresented the extent or scope of insurance coverage on an item of property, a finding of no coverage will not, as a matter of law, defeat the property owner's complaints against the agent for the alleged misrepresentation and deceptive trade practices.[90]

The purpose of requiring that a motion for summary judgment state its specific grounds is to give fair notice to the opponent and define the issues, and for that reason, a defendant-movant is not entitled to summary judgment on a ground or defense not asserted in his motion, even though the summary judgment proof conclusively establishes his right to judgment on that ground.[91]   Here, we have addressed the grounds expressly stated in Elton Porter's motion, and conclude that it has failed to conclusively establish its entitlement to judgment as a matter of law by negating at least one essential element of

---

[88] We agree that appellant's Second Amended Petition asserts causes of action for negligence, promissory estoppel, and violations of the DTPA and Insurance Code.

[89] *See Sledge v. Mullin*, 927 S.W.2d 89, 94 (Tex. App.–Fort Worth 1996, no writ).

[90] *Id.*

[91] *Id.* at 95 (citations omitted).

24

appellant's DTPA claim.[92]    Accordingly, the trial court improperly granted summary judgment as to appellant's DTPA claim.

### 3. Texas Insurance Code Claim

In its traditional motion, Elton Porter argued that appellant's Insurance Code claim "fails as a matter of law" because as in *MacIntire*, appellant's claims are not actionable because he has shown no injury beyond the denial of benefits under a lapsed policy.[93] According to Elton Porter, appellant's damages (the failure to receive benefits under the policy) were proximately caused by his own acts, errors, and omissions.

As with appellant's DTPA claim, we find that Elton Porter has not established its entitlement to summary judgment as a matter of law on appellant's Insurance Code claim. The only authority cited by Elton Porter regarding this claim is *MacIntire*; it does not point to any evidence in support of its argument.  Elton Porter's only argument is that like the claimant in *MacIntire*, appellant can have no recovery because he failed to pay the premiums, which caused the insurance to lapse.  As noted above, a finding of no coverage does not, as a matter of law, defeat a property owner's complaint against an agent for an alleged misrepresentation as to insurance coverage.[94]

We conclude that Elton Porter failed to show its entitlement to judgment as a matter of law by negating at least one element of appellant's Insurance Code claim.[95]

---

[92] *See IHS Cedars Treatment Ctr.*, 143 S.W.3d at 798.

[93] *See MacIntire*, 27 S.W.3d at 92.

[94] *See Sledge*, 927 S.W.2d at 94.

[95] *See See IHS Cedars Treatment Ctr.*, 143 S.W.3d at 798.

Accordingly, we hold the trial court improperly granted summary judgment as to this claim.

### 4. Breach of Duty to Notify Lender

In its traditional motion, Elton Porter denies that it breached "an unspecified contract" when it failed to notify appellant's lender that appellant failed to make his premium payment. Elton Porter argued that "there was no contract in place which required Elton Porter to notify [appellant's] lender that [appellant] failed to make the premium payment." Elton Porter points to no evidence in support of its argument. We note that in his deposition testimony, appellant testified he expected that his lender would be notified of any lapse in insurance, because in an earlier incident involving a different boat, the lender was notified of a lapse in insurance, and the situation was immediately "corrected." We conclude Elton Porter failed to conclusively establish its entitlement to judgment as a matter of law on this claim and that the trial court improperly granted summary judgment as to this claim.

### IV. Conclusion

The summary judgment is reversed as to each of appellant's claims, and the cause is remanded to the trial court.

LINDA REYNA YAÑEZ,
Justice

Memorandum Opinion delivered and filed
this the 5th day of March, 2009.

26